## J. W. CARTER v. Z. T. CLIFTON ET AL.

### Decided November 3, 1906.

**1.—Conflicting Evidence—Instructed Verdict.**

Where it expressly appeared from an agreed statement of facts that the evidence was conflicting on issues of fact which were material, it was error for the court to instruct a verdict.

**2.—Patent—Collateral Attack.**

The existence of the facts which authorized the issuance of a patent by the State can not be controverted in a collateral proceeding.

**3.—Same.**

In a suit of trespass to try title to certain unsurveyed school lands the issuance of a patent to the homestead tract of 160 acres was conclusive evidence of title to the same in the patentee and of his right to make the same the basis of an application to purchase additional lands under the Act of April 15, 1901.

**4.—Purchase of School Lands—Forfeiture—Burden of Proof.**

Where in a suit of trespass to try title to school land the defendant claims that the plaintiff had forfeited his right to the same by a failure to make improvements within the time required by law, the burden of proof is on the defendant to show such forfeiture.

**5.—Same—Act of 1901 Construed.**

It seems that under the provisions of the Act of April 15, 1901, concerning the purchase of school lands, it is not contemplated that the land shall be forfeited for the failure alone to make improvements.

Appeal from the District Court of Castro County. Tried below before Hon. L. S. Kinder.

*Carl Gilliland,* for appellant.

*C. G. Witherspoon* and *S. J. Dodson,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Appellant sued in trespass to try title to recover from appellees two tracts of land in Castro County, one containing four hundred and sixty-six and the other six hundred and forty acres, which had been segregated from a body of several thousand acres of unsurveyed school land situated in Castro, Parmer and Deaf Smith Counties, by surveys made at his instance, as provided in section 6 of the Act approved April 15, 1901 (page 253), amending section 6 of the Act of February 23, 1900, relating to the sale of unsurveyed school lands. The date of his application was March 12, 1902, and within the prescribed time thereafter, the surveys were made and approved and the lands classified and appraised and awarded to appellant on applications to purchase the same as additional lands. These surveys were within a radius of five miles of the home tract, which consisted of one hundred and sixty acres, patented to appellant May 10, 1901, as a homestead donation.

As to whether appellant was an actual settler on the homestead tract at the date of his application to purchase additional lands, we are informed by the agreed statement of facts that "the evidence was conflicting;" but as to whether he continued to be such actual settler or resident, there is no conflict, the statement of facts reciting that he ceased to reside thereon and "removed" therefrom to his home near Dimmitt "in the winter of 1902-3" and has resided there with his family ever since. The statement of facts, however, contains also the following recital: "It was shown by other evidence that plaintiff J. W. Carter was, at the time of making application to purchase surveys number 5 and 6, in the sheep raising business, and was herding his sheep on the land now in controversy; that some time after making said application, the defendants Millet and Clifton drove his sheep off of said land and threatened plaintiff some great bodily harm or to take his life if he, plaintiff, did not abandon said premises with said sheep; on this point the evidence was conflicting. Plaintiff stated that his reason for abandoning said home was on account of fear that defendants would carry their threats into execution."

The awards to appellant were cancelled because of affidavits filed in the General Land Office showing permanent improvements of the value of two hundred dollars made by the appellees while in possession under leases from the State, executed after January 1, 1900, and in force when awards were made to appellant, in September and October, 1902; but as to the nature and value of these improvements the evidence on the trial was conflicting.

The court instructed a verdict against appellant, and to that the errors are assigned.

It seems clear from the statement above made from the record, that at least three controverted issues of fact were raised by the evidence, namely: (1) whether appellant was residing on the home tract at the date of his purchase, so as to entitle him to acquire additional lands, as provided in article 4218fff of the Revised Statutes; (2) whether he

had been compelled thereafter to temporarily yield such possession from a well grounded fear of death or serious bodily injury, as provided in section 3, page 294, of the Act approved April 19, 1901, relating to the sale and lease of school lands; (3) whether permanent improvements to the value of two hundred dollars had been made by the lessees so as to prevent the lands from being subject to sale when awarded to appellant, as provided in section 4 of the Act last named.

The question then arises, if these issues had been submitted to the jury and they had given an affirmative answer to the first and second, and a negative answer to the third, would not appellant have been entitled to a judgment? It seems to us that he would. In opposition to this view, however, the appellees submit the following: "Our first proposition is that plaintiff's wife being the owner of three homestead claims near Dimmitt, Texas, on one of which plaintiff was residing with his family on the date of his application for a survey of the one hundred and sixty acre homestead tract, made the basis for the right to purchase the lands in controversy, that plaintiff had no right to the said one hundred sixty acre homestead tract, and that its acquisition by the plaintiff was a fraud upon the State, and as a consequence plaintiff acquired no legal title to the one hundred and sixty acres, and he could not make it a basis of a right to purchase other lands." But they can not thus collaterally attack the patent issued to him, which is conclusive evidence in this suit that he was the owner of the one hundred and sixty acre tract when he made it the basis of his application to purchase additional lands.

The next answer given is that there was no evidence that appellant had ever made permanent improvements to the value of three hundred dollars within three years next after his purchase, as required in said Act of 1901, section 3, page 294. But the burden was on appellees in claiming a forfeiture against appellant to prove that he had not made the requisite improvements. Besides, the forfeiture clause relied on does not seem to contemplate that the land should be forfeited for the failure alone to make improvements, the language being: "If any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the State," etc. It has not been suggested by the appellees that the forfeiture clause found in article 4218fff is alone applicable to purchases made under that article, which contains no excuse for failure to reside on the land for three years, and we have not so treated it, preferring rather to treat the more lenient forfeiture clause in Act of 1901 as applicable to all sales of school lands in which settlement and residence are required.

The third proposition of appellees seems to be that they had a preference right to purchase, as provided in section 7 of the Act of 1900, page 33; but if they had, they seem not to have availed themselves of it within the time there specified, even if extended by the Act of 1901, amending section 6 of the Act of 1900. General Laws 1900, page 32; General Laws 1901, page 253. In this connection they seem to rely on the fact that they had made permanent improvements to the value of two hundred dollars, but, as already seen, that was a controverted issue; and therefore one for the jury and not the court to determine.

Because the court erred in not submitting the above controverted issues of fact to the jury, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*