W. J. FOX v. J. T. ROBISON, COMMISSIONER OF THE GENERAL LAND OFFICE, ET AL.

No. 3184.   Decided March 9, 1921.

(229 S. W., 456.)

Oil and Gas—Public Lands—Permit—Abandonment.

Construing the Act of April 9, 1913, Laws, 33d Leg., pp. 409-419, concerning permits to prospect for oil and natural gas upon the public lands, it is held that the owner of such permit who, in accordance with section 25 of said Act, files his relinquishment of such permit in the General Land Office thereby refuses to proceed with the development of the area therein included and in effect forfeits his permit (section 12) such refusal being equivalent to a cancellation. The area in question thereupon becomes open to a new application by another; but not to a new application by the former holder of the permit (section 12). To permit the latter would enable him to accomplish an extension of his permit without complying with the requirements therefor provided in sections 6 and 7. (Vernon's Sayles' Civ. Stats., arts, 5904e, 5904f, 5904k, 5920c). (Pp. 76-81).

Original application by Fox to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

The application named as respondents, in addition to the Commissioner, T. M. Maes, and the Sun Company, as adverse claimants of permit to prospect for minerals on public land. The Sun Co. disclaimed interest. John L. Wortham, C. C. Crocker, H. C. Davis, and J. J. Strickland, by leave, filed pleas of intervention, claiming right to permits by applications filed after the Land Commissioner had declared the permit issued to Maes cancelled.

*S. H. Brashear* and *W. H. Dunlay,* for relator.—The holder of a permit such as that of Maes, dated May 13, 1916, can not legally extend his permit by filing a relinquishment accompanied (or practically so) by an application for a new permit, and thus defeat all others who may desire to apply for a permit on such land at the expiration of such existing permit; and also defeat the requirements of

the law for the development of the land,—which things can be done as many times as the holder desires, and the State and all persons be powerless to prevent. Vernon's Sayles' Civ. Stats., articles 5904, 5904a, 5904e, 5904f, 5904g, 5904i, 5904k, 5920c; Ketner v. Rogan, 95 Texas, 559; Hazelwood v. Rogan, 95 Texas, 295; Taylor v. Rose, 30 Texas Civ. App., 471, 70 S. W., 1022.

To the respondent Robison's proposition that the Commissioner of the General Land Office may under Chapter 173, Acts of 1913, promulgate a ruling authorizing a relinquishing licensee to make a second filing when he relinquishes the first one, we submit the proposition that the Commissioner is only authorized to adopt such rules as may appear necessary for the execution of the purposes of the Act, and not inconsistent with its provisions, and that if the rule adopted is inconsistent with the provisions or policy of the statute, such ruling is of no force or effect. But the Commissioner could not change the obvious intent of the statute by his ruling. Chap. 173, Acts of 1913, Sec. 3 and 30; Kimbrough v. Barnett, 93 Texas, 301, 55 S. W., 120.

It was the intention of the law-makers that the holder of a permit could give up whatever rights or privileges he might have thereunder. But it never could have been their intention that the holder of a permit who did not in good faith want to give up his rights and privilege thereunder, should be permitted to use the right to relinquish as a mere subterfuge and for the purpose of evading the law, and thereby avoid the forfeitures contemplated in articles 5904-f and 5904-k and obtain an extension prohibited to him by article 5904-e.

*C. M. Cureton,* Attorney-General, and *E. F. Smith,* Assistant, for respondent Robison.—In the absence of statutory regulations, rules prescribed by the Commissioner of the General Land Office, and by which claimants are guided in the obtaining of rights to lands, should have conclusive effect. Where the statute does not provide that a person relinquishing cannot refile on land relinquished he is not disabled to make a second filing. Where there is no statutory provision as to whether persons relinquishing mineral applications or permits may or may not refile on lands relinquished, the Commissioner of the General Land Office may, under said Chapter 173, Acts of 1913, promulgate a rule authorizing such person, or persons, to so file, and such second filing when made, would be legal. Acts 1913, Chapter 173, Section 25; Acts 1913, Chapter 173, Section 307; Johnson v. Eldridge, 49 Texas, 507; Hill v. Kerr, 78 Texas, 213; Shepard v. Avery, 89 Texas, 301; Sections 2-7 and 12, Chapter 173, Acts. 1913.

*Nichols, Funderbunk & Strickland, W. A. Cathey,* and *C. C. Crocker,* for interveners.—Where the statute does not prohibit a person

relinquishing a permit from filing a subsequent application on the same area, he is not disqualified to file such subsequent application and receive another permit thereon. The right of a citizen, coming within the class of citizens entitled by law to file on mineral lands, is not lost by reason of the fact that he once held a permit on the same land and had relinquished same, in the absence of a statutory provision expressly denying such right. Chapter 173, General Laws of the 33rd Legislature, regular session, Page 409, Sections 1, 3 and 25; Lewis Sutherland's Statutory Constitution, 2nd Edition, Sections 198 and 364; also, Sections 366, 367 and 388; Hamilton v. Rathbone, 175 U. S., 415; United States v. Goldenberg, 168 U. S., 97; Thornley v. United States, 113 U. S., 310; Allen v. U. S., 52 Fed. 577; Marine v. Packham, 52 Fed. 580; United States v. Allen, 58 Fed. 867; U. S., v. Dickson, 15 Peters, 165; Bend v. Hoyt, 13 Peters, 272; Tyson v. Britton, 6 Texas, 224; Roberts v. Yarboro, 41 Texas, 449; Simmons v. A1..im, 110 Texas, 309, 220 S. W., 70.

The presumption is always in favor of the correctness of the construction placed on the statute by the officer employed in its administration, and especially where this construction is contemporaneous, or nearly so, with the statute itself. United States v. Johnson, 124 U. S., 236; Cavazos v. Trevino, 35 Texas, 132; Yoakum v. Slaughter, 195 S. W., 1135; Heirs of Holliman v. Peebles, 1 Texas, 673-699; Hancock v McKinney, 7 Texas, 384, 340; Jenkins v. Chambers, 9 Texas, 167, 230; Styles v. Gray, 10 Texas 503; Ruis v. Chambers, 15 Texas, 586, 590; Herndon v. Robertson, 15 Texas, 599; Johnston v. Smith, 21 Texas, 722; Decourt v. Sproul, 66 Texas, 370; Railway v. State, 77 Texas, 388. See also United States v. Arredondo, 6 Pet., 691; United States, v. Railway, 98 U. S., 334, 341; Railway v. Railway, 112 U. S., 414, 418; Maxwell Land Grant Case, 121 U. S., 325, 381; Coal Co. v. United States, 123 U. S., 307, 216; United States v. Budd, 144 U. S., 154, 161; United States v. Railway, 142 U. S., 615, 621; United States v. California, etc., Land Co., 148 U. S., 31, 43; United States v. Railway, 148 U. S., 562; United States v. Railway, 150 U. S., 11; Chandler v. Mining Co., 149 U. S., 79.

Forfeitures are not favored by the law, and if the language used is fairly susceptible of an interpretation that will prevent a forfeiture, it will be so construed. Lewis' Sutherland's Statutory Construction, 2nd Edition, Section 547; Brown v. Insurance Co., 89 Texas, 595, 35 S. W., 1061; Decker v. Kirlicks, 110 Texas, 90, 216 S. W., 385; McAlister v. Texas Co., 223 S. W., 859; Shepard v. Avery, 89 Texas, 301; Hill v. Kerr, 78 Texas, 217; Howell v. Stewart, 54 Mo., 400; Adams v. Terrell, 107 S. W., 537; Congdon v. Cook, 55 Minn., 1, 56 N. W., 253; McRoberts v. Washburn, 10 Minn. 23; Brundy v. Mayfield, 15 Mont., 201, 38 Pac., 1067; Manhattan Trust Co. v. Davis, 23 Mont., 273, 58 Pac., 718; Underwood v. Robison,

204 S. W., 314; Erp v. Robison, 155 S. W., 180; Mitchell v. Thomas, 172 S. W., 715.

*Vinson, Elkins & Wood,* as amici curiae, also filed brief in support of contentions of interveners.

MR. JUSTICE PIERSON delivered the opinion of the court.

The relator instituted this proceeding in this Court to compel respondent J. T. Robison, Commissioner of the General Land Office, by mandamus, to accept his application and to issue to him an oil and gas permit, in terms of and conditioned as required by the law, based upon his application of date November 9, 1916.

Relator's statement of the case is admitted by respondents to be correct, and same is as follows:

"April 11, 1916, respondent Maes filed with the Clerk of the County Court an application for the right to prospect for oil and gas on 144½ acres known as the Jonas Alltmont tract, in Harris County, and said application having been recorded and thereupon filed in the Land Office, was granted and such permit duly issued to said Maes. November 8, 1916, Maes filed a relinquishment of the permit so granted him, and at the same instant that he filed the same he filed with the clerk a new application for a permit thereon, and such application was recorded and the relinquishment filed in the Land Office the next day. Also on the next day, and just five minutes after said relinquishment reached the Land Office, Maes filed with the clerk another new application for a permit on said land, which was recorded and afterwards filed in the land office. On the same day, November 9, 1916, at 11:30 o'clock A. M., Fox filed an application in due form for a permit for the right to prospect for and develop oil on said land under the Act of 1913 (Vernon's Sayles' Title 93 Chap. 1,) and it was recorded and sent to the Land Office accompanied by the legal fees and charges, but the Commissioner did not file but returned it, stating to the relator, in substance that as he understood the law (with reference to Maes's application) the holder of a permit can relinquish and then file again. Relator insisted upon the filing of his application, and it was filed on November 22, 1916. On November 27, 1916, the Commissioner advised Fox that he had rejected his application for the reason that the permit would be issued to Maes. The Commissioner had no other reason for issuing the permit to Maes than that he had relinquished as aforesaid and then reapplied for the land, but on November 28, 1916, he issued such oil and gas permit to the said Maes."

The applications and permits described in the above statement are based upon the law of 1913 relating to prospecting and developing minerals under public lands (Acts 33d Legislature, pp. 409-419)

Vernon's Sayles' Texas Civil Statutes 1914, Title 93, page 1, and a proper interpretation of said law is necessary to a proper understanding and disposition of the issues involved herein.

Article 5904 provides:

"All public school, university, asylum and the other public lands, . . . shall be included within the provisions of this Act and shall be open to mineral prospecting, mineral development and the lease of mineral rights therein in the manner herein provided. Only citizens of the United States and such other persons as have heretofore declared or shall hereafter declare their intention of becoming such shall be entitled to acquire any rights under this Act. It is declared to be the policy of the state to open all such lands to mineral prospecting and development on a system providing for the payment into the state treasury to the credit of the permanent free school, university, asylum or other funds, of certain rents and royalties upon the gross output of any minerals or mineral product thereon." (*J* cts 1913, p. 409, sec. 1).

Article 5904a provides:

"Any person or association of persons, corporate or otherwise, desiring to obtain the right to prospect for and develop petroleum oil or natural gas that may be in any of the surveyed public free school land, university or asylum or other public lands of the state,   *   *   * may do so under the regulations, terms and conditions of this Act, together with such rules and regulations as may be adopted relative thereto and necessary for the execution of the purpose of this Act by the commissioner of the general land office."

Article 5904b provides for such application to be first filed with the clerk of the county court, and that then the applicant shall file such application in the General Land Office; etc.

Article 5904e is as follows:

"Before the issuance of the permit provided for in the preceding section the applicant shall pay to the Commissioner of the General Land Office ten cents per acre for each acre embraced in the application and field notes. Thereupon a permit shall be issued to the applicant conferring upon him an exclusive right to prospect for and develop petroleum oil or natural gas within the designated area for a term not to exceed two years. Within thirty days after the expiration of the first year the owner of the permit shall pay another ten cents per acre as in the first instance. Upon the termination of the period for which the original permit was granted and the receipt of satisfactory evidence of the compliance with the conditions prescribed in section 7 of this Act (Art. 5904f), and such compliance shall not have led to the discovery of petroleum oil or natural gas in commercial quantities, then the Commissioner may grant an extension of the permit for a term not to exceed one year

upon the payment by the applicant or his successors in interest of an additional fee of twenty-five cents per acre. No extension, however, shall be granted unless satisfactory proof of an effort towards the development of the area included in the permit has been made in good faith and the expenditure of the sum required and duly submitted as set forth in section 7 (Art. 5904f) of this Act.''

Article 5904f provides:

''Before the expiration of six months after the date of the permit the owner of said permit shall in good faith commence actual work necessary to the physical development of said area, and if petroleum oil or natural gas is not developed the owner or manager shall, on or before the thirty days after the expiration of twelve months from the date of the permit, file in the general land office a sworn statement supported by two disinterested, credible witnesses that such actual work was begun within the six months aforesaid, and that petroleum oil or natural gas has not been discovered in commercial quantities and that a bona fide effort to develop same was made during the six months preceding the filing of said statement. During the two years covered by said permit the owner thereof shall expend not less than four thousand dollars in a bona fide effort for the development of such area, unless such area has sooner been developed or abandoned. The owner or manager shall, within thirty days after the expiration of the two years from the date of the permit, file with the Commissioner of the General Land Office a sworn statement supported by two disinterested, credible witnesses that such bona fide effort for the development of the area has been made, stating in what condition, and showing the expenditure thereof. A failure to file either of the sworn statements herein provided for and within the time specified, or the filing of a statement untrue or false in material matters, or the failure to expend the sum named in a bona fide effort toward the development of the area or areas, shall work a revocation of said permit and the termination of the rights of the owner. Such termination shall be endorsed by the Commissioner of the General Land Office, upon a duplicate copy of the permit retained in the General Land Office. Upon the termination of such permit the area shall again be subject to location by another than the forfeiting owner.''

Article 5904k provides:

''Should the owner of a permit fail or refuse to proceed with reasonable diligence in a bona fide effort to develop an area included in such permit, the Commissioner of the General Land Office may cancel same. . . . In the event of a cancellation of a permit or lease contract for the causes mentioned in this section the area included therein shall be subject to the application of another than the forfeiting owner, in the same manner as in the first instance.''

Article 5920c is as follows:

"The holder of a permit, a lease, a prospecting right, or any other right acquired under this Act may relinquish one or more of such permits, leases, claims or prospector's claims at any time by filing a relinquishment in the General Land Office after it is duly recorded by the clerk of the proper county, but such holder shall not be entitled to a refund of any sum paid thereon."

Relator presents his contention in the following language:

".The issue presented, therefore, is whether the holder of a permit such as that of Maes, dated ·May 13, 1916, can legally extend his permit by filing a relinquishment, accompanied (or practically so) by an application for a new permit; and thus defeat all others who may desire to apply for a permit on said land at the expiration of such existing permit, and also defeat the requirements of said Act, for the development of the land,—which things can be done as many times as the holder desires, and the State and all persons be powerless to prevent."

He insists that under the provisions of the law Maes was debarred from refiling on this land because of his former permit and relinquishment thereof.

Respondents claim that under Article 5920c Maes could relinquish his permit, and that his having been the holder of a permit and having relinquished it under this Article did not constitute a forfeiture under Article 5904k, and that under the general authority of Title 93, Chapter 1, he was competent to file on this land again.

Does the relinquishing owner have the right, under the statue, to refile on the land? Is the relinquishment of his permit equivalent to a forfeiture which under the provisions of Article 5904k would prevent another permit being granted to him?

A careful analysis and proper construction of this Article (5904k) we think determines respondent Maes' right to refile on the land. We again quote that Article, as follows:

"Should the owner of a permit fail or *refuse* to proceed with reasonable diligence in a bona fide effort to develop an area included in such permit, the Commissioner of the General Land Office may cancel same. . . . In the event of a cancellation of a permit or lease contract for the causes mentioned in this section the area included therein shall be subject to the application of another than the forfeiting owner, in the same manner as in the first instance;"

Where one has been granted a *two years'* permit to develop an area,—under the conditions stipulated in Articles 5904e, 5904f, and 5904k,—and has filed his formal and positive declaration of relinquishment, can it be maintained that he has not *refused* to proceed further under the permit and *refused* "to proceed with reasonable

diligence in a bona fide effort to develop an area included in such permit''? We think not.

The State, through the Commissioner of the General Land Office, by authority of the statute, had granted to Maes a permit, granting him the right for *two years* to prospect for and develop oil on the land under the permit. He then comes in and says to the State, through the Commissioner,—I will not proceed further to develop this area under this permit.

A relinquishment is equivalent to an abandonment and a refusal to proceed with reasonable diligence in a bona fide effort to develop the area. It is a declaration of his refusal to proceed to develop the area, and is in effect a forfeiture of his permit.

To hold otherwise, would defeat every material provision of these statutes. Further, it would be impossible for the area included in the permit to be ''subject to the application of another than the forfeiting owner, in the same manner as in the first instance.''

If a holder of a permit could relinquish same and then apply for and obtain another legal and valid permit, he could thereby avoid the consequences of the statute and the forfeitures provided for in Articles 5904f and 5904k at his will and option, and these Articles would be rendered inoperative and of no effect; for their enforcement would depend upon whether or not the holder should choose to relinquish and apply for another permit. Also, by this method Article 5904e would be nullified, as such permit holder could, by relinquishing and reapplying, in effect obtain an *extension,*—which is clearly and plainly prohibited by the express terms of that Article. That Article in part provides: ''No extension, however, shall be granted unless satisfactory proof of an effort towards the development of the area included in the permit has been made in good faith and the expenditure of the sum required and duly submitted as set forth in section 7 (Art. 5904f) of this Act.'' Such a course would authorize to be done indirectly that which the statute expressly prohibits from being done directly. To so construe it would make of it an absurdity, and would bring about a result contrary to the entire spirit of the legislation upon the subject, and one evidently not contemplated by the Legislature which passed the Act.

The whole purport and intent of these statutory provisions is so clear that we can not give to Article 5920c the interpretation contended for by respondents; and it is not necessary to construe said Article, except to say that it in nowise conflicts with the conclusions herein expressed. We are not to be understood, however, as holding that a relinquishing permit holder is precluded from ever refiling on the same land where he does so under circumstances that would not amount to an extension of his term.

The granting of a second permit to Maes by the Commissioner of the General Land Office was in contravention of the statutes, and therefore void. Relator's application being in all respects regular, and the land being subject to re-location, a permit should have been awarded to him. The rights of the other respondents herein being dependent upon the validity of the second permit issued to Maes, the disposition of that question herein necessarily concludes their interest in and to a lease on said lands.

The writ is granted directing the Commissioner of the General Land Office to issue to relator a permit under the terms of the statutes in force at the time of the filing of relator's application.