## BYNUM v. COLQUITT et al. (No. 10055.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 2, 1922. Rehearing Denied Jan. 20, 1923.)

1. **Mines and minerals** ⊂⟩5—**Invalidity of oil and gas permits and leases on public school land held not shown.**

In trespass to try title, brought by the purchaser of a school survey claiming ownership to fifteen-sixteenths of the oil and gas in the land, relinquished by the state to purchasers of public free school lands by Acts 36th Leg. 2d Called Sess. 1919, c. 81. (Vernon's Ann. Civ. St. Supp. 1922, arts. 5904o16–5904o34), where it appeared that oil and gas permits had previously been issued to others covering the land, claimed by plaintiff to be void because the husband of the holder of the permits had not joined in the relinquishment of prior permits nor in acknowledgments of powers of attorney under which third persons had acted thereunder, plaintiff *held* not to have supported the burden of showing that the former permits and leases were void, since it will be presumed that the several relinquishments were accepted by the public land commissioner in conformity to his rules and regulations, and since the permits were not necessarily community property.

2. **Mines and minerals** ⊂⟩5—**Purchaser of public school land could not take advantage of defective previous relinquishment of oil and gas permit, the state not complaining.**

A purchaser of public school land, claiming a right in the oil and gas under Acts 36th Leg. 2d Called Sess. 1919, c. 81 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5904o16–5904o34) upon whom the burden rested of showing that previous permits and leases to third persons were invalid, could not take advantage of the fact that a prior relinquishment of a permit to a third person was ineffective as not being joined in by the husband of the holder of the permit, neither such third person nor the state complaining.

3. **Mines and minerals** ⊂⟩5—**Persons interested in relinquished oil and gas permit held entitled to subsequent permit covering same land.**

Under Acts 35th Leg. 1917, c. 83, § 19 (Vernon's Ann. Civ. St. Supp. 1918, art. 5904s) relating to forfeiture of oil and gas permits and leases, it is only where an applicant has violated the requirements of such section that an application for a subsequent permit must be from a person other than the forfeiting own-

---

⊂⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

er, so that, where the holder of a permit relinquished it, others who had had an interest in the relinquished permit could, two months after the relinquishment, take out another permit covering the same land.

**4. Mines and minerals ☞5—Public land commissioner issuing oil and gas lease presumed to waive failure to develop under permit.**

Where the public land commissioner failed to forfeit oil and gas permits, when he might have done so for failure to develop within the time permitted, and issued an oil and gas lease to the holders of the permit, it will be presumed in the absence of intervening rights, that the commissioner waived the failure to develop, in view of Acts 35th Leg. 1917, c. 83, § 19 (Vernon's Ann. Civ. St. Supp. 1918, art. 5904s) vesting a large discretion in the commissioner in the matter of development and of setting aside forfeitures.

Appeal from District Court, Young County; H. F. Weldon, Judge.

Trespass to try title by H. C. Bynum, Jr., against O. B. Colquitt and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Schenck & Triplett, of Graham, for appellant.

G. B. Smedley, of Austin, and Marshall & King, of Graham, for appellees.

CONNER, C. J. The appellant H. C. Bynum, Jr., instituted this suit in the district court of Young county against the appellee O. B. Colquitt and others, in the ordinary form of an action in trespass to try title, seeking to recover the title and possession of survey No. 10, B. R. I. R., containing 160 acres in Young county. The answers of appellees, in so far as necessary to here state them, consisted of a plea of not guilty. The case was tried before the court without a jury, and resulted in a judgment in favor of the defendants, from which judgment the plaintiff has appealed.

Upon the request of the plaintiff, the trial court filed findings of fact and conclusions of law, which are as follows:

"Findings of Fact.

"1. The matter in controversy herein is the oil and gas and the right to explore for, develop, and remove the oil and gas in the survey described in plaintiff's petition. The plaintiff claims that he is the owner of fifteen-sixteenths of the oil and gas in the land, and that the state of Texas owns the other one-sixteenth. The defendants Colquitt, Graves, Colcord, and Union Oil Company, claim that they are the owners of a valid oil and gas permit issued by the state of Texas and of a valid oil and gas lease issued by the state of Texas, giving them the right to prospect for, develop, and remove from the land the oil and gas therein, paying the royalties provided in the lease, said lease providing for the pay-

ment to the state of Texas of a royalty of one-sixteenth of the value of the gross production of oil and one-sixteenth of the value of the gross production of gas saved and sold off the premises of the said survey, and the payment of like amounts to the owner of the soil.

"2. The 160-acre survey described in plaintiff's petition and referred to hereinafter as survey No. 10, was surveyed for and set apart to the public school fund many years ago. Lawful and approved field notes of said survey are on file in the general land office and have been for many years.

"3. Under an application regularly made, in accordance with the terms of the Mineral Act of 1917 (Vernon's Ann. Civ. St. Supp. 1918, §§ 5904–5904w), a permit to prospect for oil and gas on said survey No. 10 was issued by the commissioner of the general land office to Mrs. Rosa C. Graves on February 27, 1917. Said permit was relinquished by Mrs. Graves by an instrument in writing, which, after being recorded by the county clerk of Young county, was filed in the general land office on or about October 11, 1918, and notice of the relinquishment was mailed by the commissioner of general land office to the county clerk of Young county on or about said date.

"4. Said survey No. 10 being unsold, surveyed school land, the plaintiff H. C. Bynum, on May 2, 1918, filed in the general land office his application to purchase the said tract of land for grazing purposes, on condition of settlement, and paid one-fortieth of the purchase money and executed his obligation to pay the balance. Before this application was filed, the land had been duly and regularly classified as mineral and grazing land by the commissioner of the general land office and had been duly classed and designated as mineral. In his application to purchase the land, plaintiff, Bynum, expressly stated that he was buying the land for agricultural or grazing purposes only, and that, if it was classed as mineral land, the sale to him was upon the express condition that the minerals therein should be and were reserved to the fund to which the land belonged. On his application, survey No. 10 was awarded to H. C. Bynum by the commissioner of the general land office on June 6, 1918. Within 90 days from the date of the award, the plaintiff filed in the land office his affidavit that he had settled on the land, and the plaintiff within the time required by law filed in the land office his affidavit, corroborated by three citizens, stating that he had occupied the land for three years and had erected improvements thereon of a value of more than $300. This affidavit was filed by the commissioner of the land office, but a certificate of occupancy has not been issued. Under his purchase the plaintiff has paid to the state all past-due interest on the purchase money and the sale, under the application above described, is in good standing according to the land office records.

"5. Under an application regularly made under the terms of the Mineral Act of 1917, a permit to prospect for oil and gas was issued to R. M. Colquitt by the commissioner of the land office, on October 22, 1917, on 250 acres of the bed of the Clear Fork of the

Brazos river, in Young county. Application for this permit was filed with the county surveyor and a survey of the area was made by him, and field notes prepared by him were filed in the general land office and approved by the commissioner of the land office before the issuance of the permit. The said permit was relinquished by R. M. Colquitt by an instrument in writing, and said instrument, after being duly recorded by the county clerk of Young county, was filed in the general land office on or about October 11, 1918, and notice of the relinquishment was mailed by the commissioner of the land office to the county clerk of Young county on or about said date.

"6. Under an application regularly made, under the terms of the Mineral Act of 1917, a permit to prospect for oil and gas was issued to O. B. Colquitt by the commissioner of the land office on August 31, 1917, covering 1,412½ acres of the bed of the Brazos river in Young county. The application for this permit was filed with the county surveyor of said county and a survey of the area was made by him and the field notes were prepared by him and filed in the land office and approved by the commissioner of the land office before the issuance of said permit. The said permit was relinquished by O. B. Colquitt by an instrument in writing, which, after being recorded by the county clerk of Young county, was filed in the general land office on or about October 11, 1918, and notice of the relinquishment was mailed by the commissioner of the land office to the county clerk on or about said date.

"7. The three areas covered by the three oil and gas permits above referred to, issued to Rosa C. Graves, R. M. Colquitt, and O. B. Colquitt, respectively, are continuous areas.

"8. On December 2, 1918, O. B. Colquitt and J. N. Graves filed in the office of the county clerk of Young county, in accordance with the provisions of the Mineral Act of 1917, an application for a permit to prospect for oil and gas upon the said survey No. 10 and upon the said 250 acres in the bed of the Clear Fork of the Brazos river, and upon the said 1412½ acres in the bed of the Brazos river, being the same acres covered by the three permits above referred to. This application, after being recorded by the county clerk, was filed in the general land office on December 9, 1918. On January 24, 1919, the commissioner of the general land office, acting upon the said application, issued upon it to O. B. Colquitt and J. N. Graves oil and gas permit No. 2825, giving them the right to prospect for oil and gas upon the three areas included in said application, in accordance with the Mineral Act of 1917. A copy of said permit was introduced in evidence and is contained in the statement of facts. The parties to whom the permit was issued paid to the proper officers all fees provided by law. The owners of the said permit have paid in advance to the state of Texas for the first, second, and third years under said permit the 10 cents per acre rental due the state, and have paid in advance to the county clerk of Young county for the owner of the soil the 10 cents per acre rental due the owner of the soil for said survey No. 10, for the first, second, and third years. The plaintiff has never accepted any of said payments made to

the county clerk, but has refused to accept each of said payments.

"9. The actual development of the areas included in said permit was begun by the owners of the permit after the expiration of 12 months from the date of the permit, being about 13 or 14 months after the date of the permit, and within less than 18 months after its date. At that time the owners of the permit began the drilling of an oil well upon the area covered by the permit, and prosecuted it diligently to completion, without producing oil or gas in commercial quantities. A very short time thereafter the owners of said permit began the drilling of an oil well in the Clear Fork of the Brazos river, included in said permit, and prosecuted the same diligently to completion, and obtained therein, on or about February 1, 1921, oil in commercial quantities. On February 19, 1921, upon the application of the owners of said permit, the commissioner of the general land office executed and delivered to O. B. Colquitt and J. N. Graves oil and gas lease No. 2825, giving them the right to prospect for oil and gas upon said survey No. 10, and the other two areas included in said permit for a period of 10 years. A copy of said lease was introduced in evidence and is contained in the statement of facts. Under the said permit and lease, the owners of the same have drilled and completed three other oil wells in the bed of the Clear Fork of the Brazos river, included in said permit and lease, and oil in commercial quantities has been produced therefrom. Under said permit and lease the owners of the same have drilled and are now drilling an oil and gas well on said survey No. 10. The drilling of this well was begun on or about December, 1920, and its drilling has been prosecuted with diligence, and it has not yet been completed, it having been drilled to about 2,800 feet, and the oil and gas not yet having been produced from it in commercial quantities.

"10. The aforesaid permit and the aforesaid lease are in good standing in the general land office, and the commissioner of the general land office has never forfeited or declared forfeited either the said permit or lease, and has never made any entry on the land office records for the purpose of forfeiting either the said permit or the said lease, and the rights under said permit and lease have not been terminated. The said permit and lease are owned jointly by the defendants O. B. Colquitt, J. N. Graves, and C. F. Colcord, Colquitt and Graves owning together an undivided one-half interest in the same, and Colcord owning an undivided one-half interest in the same. The defendant Union Oil Company has a contractual right in the said permit and lease, in so far as that covers said survey No. 10.

"Conclusions of Law.

"1. I conclude that, in the sale of said survey No. 10 to the plaintiff, H. C. Bynum, by the state of Texas, the state reserved and excepted all the minerals, including oil and gas, in and under said land, together with the right to enter upon the land and use so much of the surface thereof as might be reasonably necessary for exploring, developing, and removing

from the land the oil and gas and other minerals in and under the same, and for ingress and egress in and upon said land for said purposes.

"2. I conclude that at the time the application for an oil and gas permit was made by the defendants O. B. Colquitt and J. N. Graves, the three areas described in the said application were surveyed lands within the terms of the Mineral Act of 1917, and that the said application was regular and that under it the said Colquitt and Graves acquired the right to an oil and gas permit upon the said areas.

"3. I further conclude that the defendants O. B. Colquitt, J. N. Graves, C. F. Colcord, and the Union Oil Company are the owners of a valid oil and gas permit and a valid oil and gas lease covering the said survey No. 10, and that under it they have the right to prospect for, develop, and remove petroleum oil and natural gas from the said land in accordance with the terms of the said permit and the said lease, paying the royalties as provided in the lease.

"4. I further conclude that plaintiff, H. C. Bynum, has no interest in the oil and gas in and under the said land except it be to the one-sixteenth royalty interest in the same provided for in the lease referred to in the foregoing findings.

"5. I further conclude that judgment should be rendered in favor of the defendants Colquitt, Graves, Colcord, and the Union Oil Company, sustaining their rights under the aforesaid permit and lease, and sustaining the validity of the aforesaid permit and lease.

"H. F. Weldon, Judge."

It would perhaps be a sufficient disposition of this case to simply adopt the trial court's findings of fact and conclusions of law and thereon affirm the judgment. We will, however, venture to add that we are the more inclined to adopt those conclusions for the reason, as we shall hereinafter more fully develop, that we gravely doubt that appellant can attack in this collateral action the proceedings of the commissioner of the general land office. It is true that, if the permit and lease issued by the commissioner of the general land office was void, in the strict sense of that term, then their nullity could be invoked and made available in behalf of appellant in this action, but we are not inclined to view the proceedings complained of as authorizing the conclusion that the permit and lease are absolutely void, but rather as, at most, irregularities that are not subject to attack in this collateral action.

Briefly stated, and in so far as material to our conclusion, appellant's attack upon the proceedings may be thus summarized: That the relinquishment of Rosa C. Graves was not effective, notwithstanding its acceptance by the commissioner of the general land office, for the reason that she at the time was the wife of J. N. Graves, and he did not join in its acknowledgment, and also in that the relinquishment in her name by O. B. Colquitt as her attorney in fact was likewise inoperative, for the reason that it had not been shown that J. N. Graves joined Rosa C. Graves, his wife, in acknowledging the power of attorney, and hence that her permit, if legally issued, remained in force, as against which the commissioner was without power to grant the permit under which O. B. Colquitt and J. N. Graves are now claiming; that Rosa C. Graves, was the wife of J. N. Graves, and that the permit to her by the commissioner occurred during the marriage relation; that hence J. N. Graves had a community interest therein, and that O. B. Colquitt, while not interested on the face of the permit, yet was interested in the permit as shown by the testimony, and that therefore both J. N. Graves and O. B. Colquitt were not thereafter qualified, under section 19 of the act of the Legislature hereinafter referred to, to accept and hold the later permit issued to them by the commissioner of the land office, under which they are claiming in this suit; that the permit under which the defendants claimed combined the school land in controversy with the river bed land, which was not public school land under the laws of 1917, and that, under the law, the funds arising from the different classes of land are not returnable to nor subject to appropriation by the state for the same purposes; that neither river bed lands nor the school lands had been developed within the 18 months from the date of the permit, as required by the act under which the permit was issued; that the defendants and those holding under them had failed to pay the 10 cents per acre to the surface owner, H. C. Bynum, as required by the law; that the permit under which the defendants claim covered a divided area, in that the middle section of the river bed had theretofore been relinquished by O. B. Colquitt, who thereafter, as well as all those interested with him, was disqualified to again become a permit holder.

Appellant also urges that the court's finding that the school land claimed by the plaintiff had been duly and legally classified as mineral and grazing land by the commissioner of the general land office is unsupported, in that the evidence does not show affirmatively that the land had been so classified by the duly constituted authorities of Texas, under the mineral laws existing at the time of the classification. Other objections to the court's findings to the validity of the permit and lease under which appellees claim are not thought to be material to the conclusion we have reached.

The legislative acts that have entered into our consideration are those approved April 9, 1913 (see Gen. Laws 33d Leg. p. 409), and act approved March 16, 1917 (see Gen. Laws 35th Leg. p. 159 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5904–5904w]) and act approved July 31, 1919 (see Gen. Laws 36th Leg. 2d Called Sess. p. 249 [Ver-

non's Ann. Civ. St. Supp. 1922, arts. 5904o16–5904o84]). As appears from the court's findings of fact, appellant's title rests upon the purchase made by him on May 2, 1918, during the operation of the act of 1917; that his purchase, as shown by his application and by his award, was of the surface, the minerals in the land in controversy therein being expressly reserved to the state. Appellant's only claim, therefore, to the minerals in the land as now presented is under the act of the Thirty-Sixth Legislature, which relinquished to purchasers of the state school lands fifteen-sixteenths of the oil and gas thereunder. As shown by the preamble to the act of 1919, the law was passed to promote the development of the oil and gas resources of the state and the relinquishment was made in consideration for the services of the donees in so promoting the development of the land. The appellant's situation, therefore, with reference to his title is that of a mere donee who thus far without dispute has rendered no service to the state. He is in the further attitude of complaining of proceedings of which the state herself has not complained. Moreover, the donation, as we may perhaps not inaptly term it, was accompanied with a very important qualification, to wit, that purchasers of public free school lands in the attitude of appellant were excluded from the benefits of the act in cases where, at the time of their purchase, there was outstanding in others "valid permits to prospect for oil and gas" theretofore issued. See section 10, Acts 36th Legislature, supra, and section 19 of the same act also provides that—

"All the terms, conditions, limitations and obligations provided in the law under which permits included herein have been or may be issued and rights secured therein shall continue and remain in full force and effect except as changed or modified by this act."

Hence, it was and is vital to appellant to destroy the outstanding permit and lease of appellees. As before stated, the state is not a party to this suit. The state, neither by the commissioner of the general land office, nor by any other authorized officer, is complaining herein. The only complaints are those of the appellant, as hereinbefore mentioned. Under the act of the Thirty-Fifth Legislature, 'under which the permit and lease of the appellees 'was issued, it was expressly provided in section 26 of the act that:

"The commissioner of the general land office shall have the general supervision of all matters necessary for the proper administration of this act, and he is authorized to adopt rules and regulations and to alter or amend them from time to time as he may deem necessary for the protection of the interest involved and not inconsistent with the provisions herein."

In other words, the commissioner of the general land office is made the state's agent for the disposition of the public free school lands and for the issuance of the permits to develop unsurveyed lands and school lands in which the mineral rights had been reserved to the state, and while as such agent he must, of course, be confined to the powers, expressly or by necessary implication, given to him, nevertheless, we think the consideration of the several acts relating to the subject will show that he is given no little discretion. As already seen, he may make rules and regulations; he is given power to forfeit permits already issued for nonperformance of the conditions of the permit on the part of the permittee, but the act of 1917 (Thirty-Fifth Legislature) nowhere declares that a a failure of a permit holder to make the payments required by the act, or to develop the lands within the period specified, shall ipso facto nullify the permit. In 32 Cyc. p. 969, it is said:

"No one but the United States can take advantage of a breach of a condition subsequent in a federal railroad grant or question the title based upon the grant because of such breach"—citing cases from Idaho, Iowa, Louisiana, Missouri, Montana, Washington, and United States.

In the case of Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800, by the Supreme Court of the United States, it was said, quoting from the headnote, that:

"The courts cannot exercise any direct appellate jurisdiction over the rulings of officers of the Land Department, nor can they reverse or correct them in a collateral proceeding between private parties."

In Heil v. Martin, 70 S. W. 430, it was held by the Court of Civil Appeals at San Antonio, writ of error refused, quoting from the headnote, that:

"The action of the commissioner of the general land office in issuing a patent to an actual settler on state land, set apart for certain educational and charitable institutions under Laws 1887, c. 99, conferring on such officer full charge of such state land, is not open to collateral attack."

In Heman v. Schulte, 166 Mo. 409, 66 S. W. 163, it was said by the Supreme Court of Missouri, quoting from the headnote, that:

"The acts of a municipal body under a power vested in it are conclusive on the courts, unless they are so unreasonable, oppressive, and subversive of the rights of the citizen, in the general purpose declared, as to clearly indicate an attempted abuse, rather than a legitimate use, of the power."

In Decourt v. Sproul, 66 Tex. 368, 1 S. W. 337, it was held that, while the state might institute a suit to set aside a patent obtained by fraud, such patent could not be collaterally avoided. In Carter v. Clifton,

44 Tex. Civ. App. 132, 98 S. W. 209, it was held that a patent to land as a homestead donation could not be collaterally attacked by defendant, in an action of trespass to try title by the patentee. In United States v. King, 9 Mont. 75, 22 Pac. 498, it was held that the certificate of the surveyor general that $500 in labor or improvements as required by the statutes there under consideration had been expended on the land, was conclusive of that fact. The author of 27 Cyc. p. 626, par. 3, states, upon the authority of certain Canada cases cited in a note not available to us, that:

"The issuance of a mining lease cures any irregularities in the application for a license or in the license itself, in the absence of fraud on the part of the licensee."

[1, 2] In the light of the authorities so briefly noticed, can it be said that in this action appellant has successfully discharged the burden of proof that must, at least, be said to rest upon him to show that the permit and lease under the appellees' claim are void, and that hence, as donee, under the act of the Thirty-Sixth Legislature, he is entitled to the minerals relinquished to purchasers of public free · school lands? We think not. In the absence of evidence showing affirmatively otherwise, we think it must be presumed that the several relinquishments of permits detailed in the record were accepted and acted upon by the commissioner under circumstances not in violation of his rules and regulations, or in opposition to any positive law. There is no affirmative evidence offered to show that the interest evidenced by the permit to Rosa C. Graves was other than a separate interest to her. Appellant relies upon the mere presumption that, inasmuch as that permit was issued to her during her marriage with J. N. Graves, it was community property, yet it was not necessarily so. Under our laws a married woman may purchase and acquire property and secure the same in her own right, and there is nothing in the act rendering impossible of performance the required conditions by a married woman. So, too, with reference to the acceptance by the commissioner of the relinquishment of Rosa C. Graves and of the several relinquishments of the other appellees, there is no affirmative evidence to the contrary showing that the husband of Rosa C. Graves did not join her in her relinquishment, or join her in the acknowledgment of the power of attorney under which O. B. Colquitt acted. But if it be admitted that the relinquishment of Rosa C. Graves did not take effect, we yet fail to see how appellant can take advantage of that fact. She is not complaining nor is the state complaining. On the contrary, it is a fair inference that Rosa C. Graves surrendered whatever interest she may have acquired by the permit to her, in that it appears that she never proceeded thereunder to prosecute development as required by the act and as having apparently acquiesced in the present claim of her husband and O. B. Colquitt. At this point we wish to quote parts of the act of the Thirty-Fifth Legislature, supra. Among its general provisions in the latter part of section 16, p. 164, it is declared:

"An owner may relinquish a permit or lease at any time by having the deed or relinquishment acknowledged, recorded by the proper county clerk and filed in the general land office accompanied by one dollar filing fee. The commissioner of the general land office shall mail notice to the proper county clerk of the filing of the relinquishment and when said notice has had time through due course of mail to reach said clerk the area shall be subject to applications as in the first instance."

Section 19 of the same act thus reads:

"If a permit or lease should be issued upon a statement by the applicant which is false or untrue in material matters, or should the owner of a permit fail or refuse to begin in good faith the work necessary to the development of the area within the time required, or should the owner of a permit fail or refuse to proceed in good faith and with reasonable diligence in a bona fide effort to develop an area included in his permit after having begun the development, or should the owner of a permit fail or refuse to apply for a lease within the prescribed time, or should the owner of a lease fail or refuse to proceed in good faith and with reasonable diligence and in a bona fide effort to develop, operate and put out the mineral or other substance at any time during the life of the lease, or should the owner of a lease fail or refuse to make proper remittances in payment of royalty or other payments or fail or refuse to make the proper statement, or fail to furnish the required evidence of the output and market value and material matters relating hereto when requested, or fail to make the annual payment on the area when requested so to do the permit or lease, as the case may be, shall be subject to forfeiture, and when the commissioner is sufficiently informed of the facts which subject the permit or lease to forfeiture he may declare same forfeited by proper entry upon the duplicate permit or lease kept in the general land office. When forfeiture has been declared a notice of that fact shall be mailed to the proper county clerk and the area shall be subject to the application of another than the forfeiting owner when the notice has had time to reach the county clerk through due course of mail; provided, the commissioner may exercise large discretion in the matter of requiring one to develop gas wells, and provided further, that all forfeitures may, within the discretion of the commissioner be set aside and all rights reinstated before the rights of another intervene."

[3] It will be noted that it is only in cases where an applicant has violated the requirements of section 19 that an application for a permit must be from a person other than the forfeiting owner. The language, as will be

noted from the above quotation from section 16, makes no such requirement in cases where there is a mere relinquishment of a permit. It is true that, in the case of Fox v. Robison, 111 Tex. 73, 229 S. W. 456, our Supreme Court held that under the act of 1913 a surrendering permittee could not immediately thereafter take out another permit, although under that act there was no express prohibition to that effect. That act, however, provides for development with stated periods, and it was held that to authorize a surrendering permit holder to immediately take out thereafter another permit was to indirectly enable him to violate and avoid the time requirements relating to development. But that case, we think, is distinguishable from the case before us, in that there the surrendering permit holder made his application within a few minutes after acceptance of a relinquishment of an earlier permit. In the case before us, however, the relinquishment of Rosa C. Graves was on October 11, 1918, and the permit to appellees Graves and Colquitt was not issued until December 2, 1918. During the interim—two months lacking a few days—the land was subject, in so far as the record shows, to application by any person, including appellant. There is an entire absence of evidence indicating that the former relinquishment was for the purpose of avoiding the time requirements of development or for avoiding any other requirement of the act, and it is evident, from a consideration of the act as a whole, that the laws authorizing permits to prospect for oil and gas was the principal consideration of their passage, and we feel unable to say, as a matter of law, that the mere fact that at one time J. N. Graves or O. B. Colquitt, or both of them, had an interest in the original permit issued to Rosa C. Graves precludes them from holding the permit under which they now claim, particularly in view of the fact that the interest of Graves rests upon the presumption and that of Colquitt upon his testimony which wholly fails to define the character of interest he had therein.

[4] Stress is also laid upon the fact that development of the river bed section and upon the school land in question did not take place within the time limit of the act. It may be that for this reason appellees' permits were subject to forfeiture and that the commissioner might have so declared, but he did not do so and we think it must be presumed that, in the absence of any intervening right and the interest of the general purpose of the Legislature, he waived such failures in development as were shown, for reasons deemed by him sufficient at the time. This is particularly true, we think, in view of the concluding language of section 19, of the act of 1917, above quoted, wherein it is said:

"The commissioner may exercise large discretion in the matter of requiring one to develop gas well, and provided further, that all forfeitures may, within the discretion of the commissioner be set aside and all rights reinstated before the rights of another intervene."

We will not extend this opinion, already too long perhaps, by a discussion of other questions presented, further than to add that the evidence fully supports the trial court's findings that all sums of money required of appellees under the terms of the law and under their permit and lease have been paid, and that the evidence sufficiently shows that section 10—the land claimed by appellant and in controversy—was duly appraised as grazing and mineral land.

We conclude that the trial court's findings of fact and conclusions of law should be adopted, and the judgment affirmed.