TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY and Transamerica Annuity Service Corporation, Appellants,

v.

RAPID SETTLEMENTS, LTD. and Raymond Echols, Appellees.

No. 01–07–00137–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 18, 2008.

386

David L. Pybus, Hilary A. Frisbie, Preis & Roy, Houston, TX, for Appellants.

Harry J. Fleming, John R. Craddock, Monica Cavazos–Rosas, Susan Hatcher Knight, The Feldman Law Firm LLP, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION ON REHEARING

BLAND, Justice.

We grant rehearing and withdraw our opinion and judgment of July 3, 2008, and issue the following in their stead. We dismiss Rapid Settlements' motion for en banc rehearing as moot. Our disposition of the case remains unchanged.

Transamerica Occidental Life Insurance Company and Transamerica Annuity Service Corporation (collectively, Transamerica) bring a restricted appeal from the trial court's final judgment confirming an arbitration award in favor of appellee Rapid Settlements. Transamerica contends that it never received notice of Rapid Settlements' suit, nor consented to the judgment, and that the trial court further erred by entering the order to aid in the

enforcement of judgment because: (1) the arbitrator exceeded his authority in making the award; (2) the agreement between Rapid Settlements and appellee Raymond Echols[1] is invalid and unenforceable; (3) the trial court lacks subject matter jurisdiction over Rapid Settlements' claim; and (4) the judgment contains various findings of fact and conclusions of law not supported by the record. We conclude that the trial court has subject matter jurisdiction over this dispute. We further conclude that, because Transamerica is a nonsignatory to the agreement to arbitrate, it is unenforceable against it. We therefore reverse and render judgment that Rapid Settlements take nothing against Transamerica on its claim for enforcement.

## Background

In 1988, Echols settled a personal injury action in exchange for the right to receive a $100,000.00 structured settlement payment in 2027. The Transamerica entities serve as annuity insurer and annuity obligor of this structured settlement agreement. In 2005, Echols and Rapid Settlements entered into a transfer agreement which provided that Rapid Settlements would pay Echols a lump sum of $5,000.00 in exchange for his right to the future payment under the structured settlement agreement. The transfer agreement dictates that all disputes arising under it be resolved by an arbitrator under Texas law. Rapid Settlements claims that Echols, who lives in Tennessee, attempted to cancel the transfer. Rapid Settlements instituted an arbitration proceeding in Texas against Echols, asserting breach of the transfer agreement. In July 2006, the arbitrator entered an agreed award in favor of Rapid Settlements. The arbitrator's award approves the transfer of the $100,000.00 structured settlement payment, and

awards Rapid Settlements $375.00 in arbitration fees. Transamerica did not participate in the arbitration proceedings. The award nevertheless ordered Transamerica to change the designated payee under the annuity to an entity designated by Rapid Settlements, and to send formal acknowledgment of the transfer within seven days after Transamerica's receipt of a judgment confirming the award.

Rapid Settlements then filed an "Original Petition for Confirmation of Arbitration Award" in Harris County Civil Court at Law Number 1. The petition names Echols as the sole defendant. Transamerica was neither named as a party nor served with notice of the suit. Following a hearing,[2] the trial court signed a final judgment confirming the arbitration award. The judgment orders

> that [Echols] and [Transamerica] are hereby directed to deliver and make payable to [Rapid Settlements], its successors and/or assigns, as they become due, the following payments under the Annuity Contract No. 872191TOO3Z with Echols:

> One (1) lump sum payment in the amount of $100,000 due and payable on December 17, 2027 . . . as such become due.

The judgment further orders that, as payment for its arbitration fees, Rapid Settlements was to "hold back and retain $375" from the amount total Echols was otherwise due to receive under the transfer agreement. Within six months, Transamerica noticed its restricted appeal from this judgment.

## Discussion

### I. Subject Matter Jurisdiction

 As a threshold matter, we address Transamerica's contention that the

---

1. Echols has not filed an appellee's brief or otherwise participated in this appeal.

2. Neither party requested a reporter's record of the hearing, so none exists.

amount in controversy exceeds the limits of the court's jurisdiction and thus requires dismissal of the cause. Subject matter jurisdiction is essential for a court to have the authority to resolve a case. *French v. Moore*, 169 S.W.3d 1, 6 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993)). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Id.* (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). We look to the allegations in the plaintiff's petition in determining the amount in controversy for jurisdictional purposes. *See id.* (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex.1996)); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (stating that amount in controversy "must ordinarily be decided solely on the pleadings"). We must presume that the trial court has subject matter jurisdiction unless the absence of jurisdiction affirmatively appears on the face of the petition. *French*, 169 S.W.3d at 6. Normally, the plaintiff's pleadings determine the amount in controversy, except when the defendant alleges that the amount pleaded by the plaintiff is a sham to wrongfully obtain jurisdiction. *Id.* (citing *Bland*, 34 S.W.3d at 554); *see also United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 402 (Tex.2007) ("We have previously held that the amount in controversy is determined by the amount the plaintiff seeks to recover."). If a plaintiff fails to state an amount in controversy in its petition, the trial court is not automatically deprived of subject matter jurisdiction. *French*, 169 S.W.3d at 6–7 (citing *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989)). Rather, a

plaintiff may prove jurisdiction at trial. *Id.* at 7 (citing *Peek*, 779 S.W.2d at 804).

Sections 25.0003 and 25.1032 of the Texas Government Code grant jurisdiction to statutory county courts and to the Harris County Civil Courts at Law. *See* TEX. GOV'T CODE ANN. § 25.0003 (Vernon 2004 & Supp. 2007); *see also Cazarez*, 937 S.W.2d at 447–49. The jurisdictional limit of the Harris County Civil Courts at Law is more than $500 but less than $100,000, excluding interest, statutory or punitive damages, penalties, attorney's fees, and costs. TEX. GOV'T CODE ANN. §§ 25.0003(c)(1), 25.1032(a); *see also Smith v. Clary Corp.*, 917 S.W.2d 796, 798 (Tex.1996) (stating general jurisdictional rule, and noting that "many exceptions" exist).

Rapid Settlements' original petition does not allege that the amount in controversy is within the jurisdictional limits of the court. In its request for relief, Rapid Settlements asked that the trial court "enter judgment confirming the arbitrator's award as made by the arbitrator." Rapid Settlements attached a copy of the arbitration award, and expressly incorporated it by reference. The arbitration award orders Echols and Transamerica "to deliver and make payable to [Rapid Settlements] ... [o]ne (1) lump sum payment in the amount of $100,000 due and payable on December 17, 2027 ... as such become due." It also awards Rapid Settlements $375 in arbitration fees.[3]

Although its pleadings sought enforcement of an arbitration award under which it was to receive $100,375, the award also requires Rapid Settlements to pay Echols the net amount of $4,625 for the assignment of the right to the future payments under the transfer agreement. Thus, the maximum amount Rapid Settlements sought to recover in its original pleadings

3. The transfer agreement provides that "[t]he Assignment Price shall be reduced by any legal/attorneys' fees set forth in the Disclosure Statement ...."

for enforcement of the arbitration award is $95,375, an amount within the jurisdictional limits of the trial court. We hold that the amount in controversy was within the jurisdictional limits of the court.

## II. Transamerica's Appellate Standing

A party may file a restricted appeal when, despite its status as a party to the suit, it: (1) did not participate either in person or through counsel in the hearing that resulted in the judgment it complains of; and (2) did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or notice its appeal within the time permitted under the regular appellate timetable. *Quaestor Inv., Inc. v. State*, 997 S.W.2d 226, 227 (Tex.1999); Tex.R.App. P. 30. The party must file notice of its restricted appeal within six months after the trial court signs the judgment. Tex.R.App. P. 26.1(c). The party also must show error apparent from the face of the record. *Quaestor*, 997 S.W.2d at 227.

Transamerica is subject to service and, as insurer and obligor of the structured settlement with Echols, has an interest in avoiding exposure to competing claims to future payments. *See* Tex. Civ. Prac. & Rem.Code Ann. § 141.002(7) (Vernon 2005) (defining annuity insurer and "any other party with continuing rights or obligations" as interested persons with respect to structured settlements); Tex.R. Civ. P. 39; *see, e.g., Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 718 (Tex. App.-Dallas 2004, no pet.). Transamerica did not participate in the confirmation hearing that led to the judgment, did not file any postjudgment motions, and filed notice of its appeal within six months after the trial court signed the judgment.[4]

Transamerica therefore meets the requirements for bringing this restricted appeal.

## III. Does the Arbitration Award Bind Transamerica?

In the underlying transaction in this case, Echols, a tort claimant who settled his claim by entering into a structured settlement, entered into an agreement to transfer his future-payment rights to Rapid Settlements, a factoring company, in exchange for a discounted lump sum paid in the present. Transamerica, which is responsible for insuring and distributing the future-income stream, contends it cannot be bound by the arbitrator's decision because (1) it is not a party to the transfer agreement, and therefore not a party to its arbitration clause, and (2) its relationship with Echols does not support any theory under which Echols' signing of the agreement would otherwise bind Transamerica. Rapid Settlements, on the other hand, asserts that Transamerica is "bound as a mere stakeholder" under a theory of privity, and maintains that Transamerica does not have a "distinct and separate interest in the underlying dispute." The trial court's judgment adopts Rapid Settlements' position, viewing the question of whether it had jurisdiction over Transamerica as "irrelevant because this proceeding is the equivalent of an 'in rem' or interpleader action and the Arbitrator has jurisdiction as in an interpleader over the monies due by [an] Annuity Owner and Annuity Issuer over which the only issue is to whom Annuity Owner and Annuity Issuer will pay same."

"It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294,

---

4. The trial court signed its judgment on August 11, 2006. Transamerica had until Monday, February 12, 2007, to notice its restricted appeal. *See* Tex.R.App. P. 4.1(a). It filed its notice on that date.

122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002). "[A] duty to arbitrate can arise only by agreement." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir.2008) (citing *United Steelworkers of Am. v. Warrior & Gulf,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)).

 A "gateway dispute" about whether the parties are bound by a given arbitration clause raises "a question of arbitrability for a Court to decide." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002); *see also AT & T Techs., Inc. v. Communc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *TriMas Corp.,* 531 F.3d at 535; *Will–Drill Res., Inc. v. Samson Res. Co.,* 352 F.3d 211, 219 (5th Cir.2003) (holding that "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute"). Under the FAA, state law governs the question of whether a litigant has agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130–31 (Tex.2005).

 According to principles of contract and agency law, arbitration agreements may bind nonsignatories under any of six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third party beneficiary. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 739. In determining whether Transamerica's interest

falls under any of these theories, we must first examine the extent to which state law defines Transamerica's duties as an annuity insurer and obligor of Echols' structured settlement.

Texas and the forty-two other states that have enacted structured settlement protection acts did so to protect unwary tort claimants from potential abuse in their transactions with factoring companies. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,* No. H–05–03167, 2008 WL 901584, at *2 (S.D.Tex.); *see* Tex. Civ. Prac. & Rem.Code Ann. § 141.004 (Vernon 2005).[5] The district court in *Symetra* summarized the function and purpose of the state structured settlement protection statutes:

> These statutes typically require the factoring company fully to disclose the effect of the proposed transfer and require a state-court judge affirmatively to approve the transfer after a hearing as in the best interests of the settling tort claimant. The purpose of the statutes is to protect the claimant/payee from overreaching by factoring companies and to ensure that the decision to give up future-payment streams in exchange for a present discounted lump-sum payment is informed and voluntary.

*Id.; see also In re Rapid Settlements, Ltd.,* 202 S.W.3d 456, 460 n. 1 (Tex.App.-Beaumont 2006, pet. denied) (citing H.B. 1920, 77th Leg., Bill Analysis, Mar. 6, 2001); *Johnson v. Structured Asset Servs., L.L.C.,* 148 S.W.3d 711, 729 (Tex.App.-Dallas 2004, no pet.) (observing that purpose of SSPA is to protect unwary structured settlement recipients who are "in need of cash from exploitation by factoring compa-

---

**5.** Because Echols is a resident of Tennessee, the Tennessee Structured Settlement Protection Act governs the transfer of Echols' right to payment under his structured settlement. *See* Tenn.Code §§ 47–18–2601 through 47–

18–2607. The Texas Structured Settlement Protection Act affords substantially the same protections. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 141.001 through 141.007 (Vernon 2005).

nies"). Rapid Settlements did not seek court approval required under the Texas and Tennessee acts.

The structured settlement protection acts detail the procedure courts must follow for adjudicating an application for authorization of a transfer of structured settlement payment rights. *See, e.g.,* Tenn. Code § 47–18–2604; Tex. Civ. Prac. & Rem. Code Ann. § 141.006. The party seeking authorization must serve written disclosures on all interested parties before the hearing to consider whether the proposed transfer is in the best interests of the proposed transferor and meets the other statutory requirements for approval. *See, e.g.,* Tenn.Code § 47–18–2604; Tex. Civ. Prac. & Rem.Code Ann. § 141.006. The definition of "interested party" in these statutes typically includes annuity insurers, obligors, and issuers, and requires that they receive notice of a judicial application for authorization of a transfer of structured settlement payment rights. *See* Tenn.Code §§ 47–18–2602(6), 47–18–2604; Tex. Civ. Prac. & Rem.Code Ann. §§ 141.002(7), 141.006. The state statutes thus expressly recognize that annuity insurers and obligors like Transamerica are "interested parties," and thereby acknowledge that annuity insurers and obligors like Transamerica are not merely stakeholders, but rather have a unique interest in ensuring compliance with the statutory restrictions on the transfer of structured settlement rights. The arbitration award and the trial court's judgment confirming that award fail to protect that interest, and potentially expose Transamerica both to conflicting payment demands and the consequences of violating the state structured settlement protection acts if it transfers the annuity payments without the court approval these statutes require. *See Symetra,* 2008 WL 901584 at *18.

Rapid Settlements forwards no other basis to bind Transamerica, a nonsignatory, to the arbitration clause in the transfer agreement. It does, however, contend that state law is irrelevant in the context of a confirmation of an FAA-governed arbitration clause, such as the one at issue here. Rapid Settlements points to the United States Supreme Court's recent decisions in *Preston v. Ferrer,* —— U.S. ——, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008), and *Hall Street Associates, L.L.C. v. Mattel, Inc.,* —— U.S. ——, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), as support for its contention. We find these cases inapposite. In *Preston,* the Court rejected the petitioner's claim that a state administrative agency with exclusive jurisdiction under state statute to decide his challenge to the validity of the parties' contract—an issue that admittedly fell within the contract's arbitration clause—should hear the challenge before subjecting the claim to arbitration. 128 S.Ct. at 985, 987. In *Mattel,* the Court held that the FAA's statutory grounds for prompt vacatur and modification are exclusive, and cannot be supplemented by contract.[6] 128 S.Ct. At 1400. Neither of these cases involves a nonsignatory claim, nor does the Court disturb its prior holdings that the issue of whether a party has agreed to arbitrate is a question of state law.

Transamerica's role in the structured settlement transaction—one informed by state law—does not render it a party to the transfer agreement's arbitration clause or otherwise bind it as a nonsignatory.

---

**6.** The statutory language analyzed in *Hall Street Associates, L.L.C. v. Mattel, Inc.,* —— U.S. ——, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), applies exclusively to parties, and thus has no bearing here. *See* 9 U.S.C.A. §§ 11, 12 (providing for vacatur, modification, or correction of an arbitration award "upon the application of *any party to the arbitration*") (emphasis added).

Accordingly, we hold that the arbitration clause in the transfer agreement between Echols and Rapid Settlements does not bind Transamerica, and that neither the arbitration award nor the trial court's judgment confirming that award is enforceable against it.[7]

### Conclusion

We hold that the trial court erred in entering judgment confirming the arbitration award against Transamerica in the absence of Transamerica's agreement to arbitrate. We therefore reverse the portion of the trial court's judgment that orders Transamerica to perform or refrain from performing any act, and render judgment that Rapid Settlements take nothing against Transamerica on its claim for enforcement.

All pending motions are dismissed as moot.

---

7. We express no opinion concerning the propriety of the award or the trial court's confirmation of it as applies to Rapid Settlements and Echols.