**Affirmed as Modified and Opinion filed August 25, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00584-CV

---

**METROPOLITAN LIFE INSURANCE COMPANY AND
METROPOLITAN TOWER LIFE INSURANCE COMPANY, Appellants**

**V.**

**STRUCTURED ASSET FUNDING, LLC D/B/A 123 LUMPSUM; ANDREW
JONATHAN SETTLEMENT FUND, LLC; AND BRADLEY TURPIN,
Appellees**

---

**On Appeal from the County Court at Law No. 2
Galveston County, Texas
Trial Court Cause No. CV-0073918**

---

## O P I N I O N

Personal-injury claims frequently conclude with a structured-settlement agreement in which the parties agree that, instead of receiving compensation for the injury in a single lump sum, the claimant will receive periodic payments. The tortfeasor's liability insurer often arranges for these periodic payments by

purchasing an annuity and naming the claimant as the payee. Payees wanting to receive payments ahead of schedule may sell the right to receive some or all of the future payments to a factoring company at a discount, but the transfer must be approved by a court in accordance with the Texas Structured Settlement Protection Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.001–.007 (West 2011).

Here, the tortfeasor's liability insurer's successor and the annuity issuer appeal from a court order that approved a transfer including a servicing arrangement and taxed the costs of court against them. We find no error in the portion of the court order approving the transfer, but we agree that the trial court erred in taxing court costs against the insurers. We therefore modify the judgment to tax costs against the factoring company and affirm the judgment as modified.

## I. BACKGROUND

After Bradley Turpin was seriously injured in a motor vehicle accident in 2002, he successfully sued the responsible tortfeasor. To pay the judgment, the parties agreed to a structured settlement in which Turpin would receive periodic payments as compensation for his injuries. The tortfeasor's liability insurer entered into a "qualified assignment agreement" with Metropolitan Tower Life Insurance Co. ("Met Tower") in which Met Tower assumed the responsibility for Turpin's periodic payments. To fund those payments, Met Tower bought an annuity from Metropolitan Life Insurance Company ("Metlife"). We refer to the two insurers collectively as "Metropolitan." As part of the settlement, Turpin also received periodic payments from a separate annuity issued or paid for by Prudential.

When Turpin wanted more money than he was currently receiving from the periodic payments, he sold a portion of the income stream to a factoring company at a discounted rate. By early 2013, he had completed six such transfers, receiving

2

$767,000 for periodic payments having a future value of over $3 million. Two of the transfers were from the income stream provided by the Metropolitan annuity.

In 2015, Structured Asset Funding, LLC d/b/a 123 LumpSum ("LumpSum") offered Turpin $175,000 in exchange for the right to a $1,850 portion of each of 174 of Turpin's monthly payments. In accordance with the Texas Structured Settlement Protection Act ("the Act"), LumpSum filed an application for approval of the transfer in a Galveston county court at law and served Metropolitan, as an interested party, with copies of the application, the transfer agreement, and other required documents. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.006. After a hearing, the trial court appointed an independent financial consultant to advise the court, at LumpSum's expense, on the competitiveness of LumpSum's offer. The consultant's report is not in the record, but correspondence to the trial court from Turpin and LumpSum show that LumpSum responded to the report by increasing its offer to $190,000, and that Turpin wanted to accept the amended offer. The trial court approved the transfer, so that LumpSum paid Turpin $190,000 for the right to a stream of payments having a future value of $321,900.

Under the trial court's final order, the payments to LumpSum and to Turpin reach their respective owners through the following "Servicing Arrangement":

- The 174 monthly payments that Turpin is to receive from the Metropolitan annuity from April 15, 2015 through September 15, 2029 are referred to in the judgment as "the Term Payments."

- Each monthly Term Payment is made up of two parts: the $1,850 portion purchased by LumpSum is called the "Turpin Assigned Payment," and the remaining amount to be retained by Turpin is called the "Remaining Turpin Monthly Payment."

3

- Metropolitan is to send the entirety of each Term Payment to LumpSum's assignee Andrew Jonathan Settlement Fund, LLC ("Andrew Jonathan").

- Andrew Jonathan is to retain the $1,850 Turpin Assigned Payment and remit the Remaining Turpin Monthly Payment to Turpin.

The trial court taxed costs against Metropolitan. Turpin and LumpSum signed the order, approving it as to both form and substance, and Metropolitan appealed.

## II. ISSUES PRESENTED

Metropolitan presents the following issues for review:

1.    The trial court impermissibly rewrote the terms of the settlement agreement, the qualified assignment, and the annuity, by requiring Metropolitan to pay certain periodic payments to Andrew Jonathan instead of to Turpin.

2.    The trial court erred in designating Andrew Jonathan as Turpin's payment agent.[1]

3.    The trial court improperly circumvented the Act by requiring Metropolitan to indirectly divide periodic payments through Andrew Jonathan as "servicer."

4.    The trial court erred in compelling Metropolitan to pay the unassigned Remaining Turpin Monthly Payments to Andrew Jonathan, thereby forcing Metropolitan into a business and contractual relationship with Andrew Jonathan.

---

[1] Although this contention was briefed under the same heading as Metropolitan's first issue, the arguments are so distinct that we discuss it as a separate issue.

4

5. In imposing the servicing arrangement on Metropolitan, the trial court granted relief LumpSum did not request and to which it was not entitled under the Act or under Texas procedural law.

6. By approving the transfer, the trial court violated the Act and abused its discretion because the transfer is not in Turpin's best interest.

7. The trial court improperly taxed costs against Metropolitan.

### III. ANALYSIS

The construction of a statute is a question of law, which we review de novo. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Our aim in construing a statute is to give effect to the legislature's intent. *See id.* We identify that intent by looking first to the statute's plain language. *See id.* We presume that the legislature purposefully chose which words to include in the statute and which to omit. *See id.* We do not consider statutory provisions in isolation, but read the statute as a whole. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) (orig. proceeding).

### A. The trial court did not impermissibly rewrite the Uniform Qualified Assignment & Release.

In its first issue, Metropolitan argues that by requiring Metropolitan to pay the unassigned portion of the 174 Term Payments to Andrew Jonathan (i.e., the Remaining Turpin Monthly Payments), the trial court improperly rewrote the terms of three documents. Metropolitan refers to these three documents—the settlement agreement, the qualified assignment, and the annuity—as the "Governing Contracts." According to Metropolitan, these contracts required Metropolitan to pay Turpin, and the trial court is not authorized to rewrite these contracts without Metropolitan's consent.

5

This argument is a straw man.[2] It begins with Metropolitan's creation of a category of three documents which it calls the "Governing Contracts." There is no such category of documents in the Act. The Act instead speaks of the "terms of the structured settlement," which includes not only the three documents cited by Metropolitan but also "any order or other approval of the court." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.002(17). Because the legislature has declared that a court order approving a transfer of structured settlement payment rights becomes part of the "terms of the structured settlement," it cannot be said that the trial court lacked authority to order the periodic payments delivered to someone other than a payee named in an earlier contract.

Metropolitan then states that the trial court ordered Metropolitan to pay Andrew Jonathan even though the qualified assignment says, "Periodic Payments [are] payable to Bradley D. Turpin." Metropolitan argues that this is reversible error because courts are not authorized to rewrite the parties' contract. In support of this argument, Metropolitan relies on *In re Rains*, 473 S.W.3d 461, 469–70 (Tex. App.—Amarillo 2015, no pet.) and *Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 472 S.W.3d 325, 334 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Courts are not authorized to rewrite agreements by inserting additional terms, definitions, or provisions that the parties could have included themselves, or by implying terms for which the parties have not bargained."). We do not find the *Rains* decision persuasive, and the language that Metropolitan quotes from *Wolf Hollow* is taken out of context.

The *Rains* court reversed a transfer under the Act. Citing no supporting authority, the authoring court stated,

---

[2] A straw man is a misrepresentation created "for the express purpose of being knocked down." *See* MADSEN PIRIE, THE BOOK OF THE FALLACY 160 (1985).

6

> [W]e found nothing [in the Act] that authorized a trial court to unilaterally modify the terms of a previously existing contract. . . . So, the trial court had no authority to simply decide to change those portions of the annuity contract obligating [Metropolitan] to pay Rains. The terms of the contract regarding [Metropolitan's] obligation to pay Rains were unambiguous and definite; thus, the court was obligated to enforce them as written unless the parties agreed otherwise. Not all of them did here. So, the trial court erred.

*Rains*, 473 at 469–70.

But the *Rains* court painted with too broad a brush. Statements about a trial court's lack of authority to rewrite a contract—including the statement in *Wolf Hollow*—generally are made in the context of contract interpretation or construction. *See Gen. Am. Indem. Co. v. Pepper*, 161 Tex. 263, 265, 339 S.W.2d 660, 661 (1960) ("A court is not at liberty to revise an agreement while professing to construe it."); *E. Tex. Fire Ins. Co. v. Kempner*, 87 Tex. 229, 236, 27 S.W. 122 (1894) (explaining that courts "cannot make a new contract for [the parties], nor change that which they have made under the guise of construction"). As this court commonly states the rule, "We may not rewrite the parties' contract or add to its language *under the guise of interpretation*." *Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W.3d 309, 312 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (emphasis added).

Unlike a contract action, however, an application for approval of a transfer agreement is not an action for the breach, enforcement, or interpretation of a contract; thus, the trial court did not purport to "interpret" a qualified assignment agreement as identifying the payee to be someone other than the person named. Rather, the trial court exercised the authority conferred by the legislature to require the structured settlement obligor or annuity issuer "to make any payment directly or indirectly to any transferee of structured settlement payment rights" rather than

7

paying the individual named as the payee in the qualified assignment agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004.

The qualified assignment agreement itself recognizes Turpin's right to sell or assign periodic payments if the transfer "has been approved in advance in a 'Qualified Order'" as defined in 26 U.S.C. § 5891(b)(2) "and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute." Section 5891(b)(2) defines a "qualified order" to include an order authorized by a state statute and containing express findings that the transfer does not contravene any state or federal statute; does not contravene a court order or an order of any administrative authority; and "is in the best interest of the payee, taking into account the welfare and support of the payee's dependents." 26 U.S.C. § 5891(b)(2) (2014). Because the Texas Structured Settlement Act requires the same findings, an order that complies with the Act is a "qualified order." *Compare id. with* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004. The final order in this case included all of the required findings.

In sum, Metropolitan's argument fails because this is not a contract action; it is a statutory action. In passing the Act, the legislature authorized the trial court to approve a transfer if certain conditions are met, and Metropolitan does not challenge the validity of the Act. Thus, the case does not turn on whether the trial court acted in accordance with the certain contracts,[3] but on whether the trial court acted in accordance with the statute. We overrule Metropolitan's first issue.

---

[3] Section 141.004(3) does not require the trial court to find that the transfer does not contravene the terms of any contract.

**B.** **The trial court did not err in ordering Metropolitan to make the term payments to Andrew Jonathan "as Mr. Turpin's designated and authorized payment agent for purposes of receiving the Term Payments."**

Metropolitan next argues that the trial court erred in designating Andrew Jonathan as Turpin's payment agent. According to Metropolitan,

> to support the Trial Court's agency designation, [LumpSum] would have needed to show at a minimum that: (1) a proper agency agreement was established before the Trial Court; (2) [Metropolitan], which was not a party to the agency agreement but was a party to the [settlement agreement, the qualified assignment, and the annuity], could be compelled by Mr. Turpin pursuant to the [structured settlement agreement, the qualified assignment, and the annuity] to comply with the agency agreement; (3) the [Structured Settlement Protection Act] case was a proceeding in which Mr. Turpin could seek, and in fact did seek, to compel MetLife to comply with the alleged agency agreement; and (4) the [structured settlement agreement, the qualified assignment, and the annuity]'s requirement that payments be made "to Bradley D. Turpin" could be amended pursuant to the alleged agency agreement.

Metropolitan cites no authority in support of these requirements. Moreover, this argument, like the one preceding it, is based on the incorrect premise that this is a contract action. This was not a proceeding to enforce the preexisting terms of the structured settlement agreement, the qualified assignment, or the annuity. It also was not a proceeding to compel Metropolitan to comply with a preexisting agency agreement between Turpin and Andrew Jonathan. This instead was a proceeding for approval of a transfer of structured settlement payment rights, and the court order granting that approval became part of the "terms of the structured settlement agreement."

Metropolitan also asserts that there is no evidence of an agency relationship between Turpin and Andrew Jonathan. In reviewing such a no-evidence challenge, we consider the evidence in the light most favorable to the judgment, "crediting

9

favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The evidence is legally insufficient to support the finding only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

The record establishes that Andrew Jonathan is Turpin's designated payment agent. LumpSum's general counsel Duane West explained the reason for the servicing arrangement, attesting that Andrew Jonathan is "a bankruptcy-remote entity/special-purpose vehicle set up to collect the payments made by the insurance company," so that if LumpSum were to file for bankruptcy protection, the payments from Metropolitan to Andrew Jonathan and from Andrew Jonathan to Turpin would be unaffected. Turpin testified that he understood the servicing arrangement; that he was completely comfortable with it; and that he was asking the trial court to approve it. Finally, the trial court's transfer order contains Turpin's express written agreement to the agency relationship. The pertinent language is as follows:

> By signing and approving this order, Mr. Turpin acknowledges, understands, and agrees that he will receive the Remaining Turpin Monthly Payments through Andrew Jonathan (as the servicer under this Final Order and as his designated payment agent solely for purposes of receiving and distributing the Term Payments to Mr. Turpin pursuant to the Servicing Arrangement and this Final Order) and that [Metropolitan] shall not be obligated to make any portion of the Term Payments directly to Mr. Turpin; that Mr. Turpin shall look solely and exclusively to Andrew Jonathan for the Remaining Turpin Monthly Payments; and that [Metropolitan] shall not, following the signing of this Final Order by the Court, have any obligation or

liability (contractual or legal) to Mr. Turpin relative to the Term Payments, including the Remaining Turpin Monthly Payments.

Turpin signed the order, approving it as to form and substance; thus, he expressly authorized Andrew Jonathan to act as his designated payment agent to receive the Term Payments and to distribute the amounts due to Turpin.

We overrule this issue.

## C. The trial court did not improperly circumvent the prohibition against requiring the structured settlement obligor or the annuity issuer to divide any periodic payment.

Metropolitan contends that by approving the servicing arrangement, the trial court improperly circumvented section 141.005(4) of the Act, which states, "Following a transfer of structured settlement payment rights under this chapter . . . neither the structured settlement obligor nor the annuity issuer may be required to divide any periodic payment between the payee and any transferee or assignee or between two or more transferees or assignees . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(4).

To apply this provision to the parties concerned in this case, we must identify the people or entities to which the terms refer.

- "Structured settlement obligor"—here, Met Tower—"means, with respect to any structured settlement, the party that has the continuing obligation to make periodic payments to the payee under a structured settlement agreement or a qualified assignment agreement." *Id.* § 141.002(15).

- An "annuity issuer" is "an insurer that has issued a contract to fund periodic payments under a structured settlement." *Id*. § 141.002(1). MetLife is the annuity issuer.

11

- Turpin is the "payee," that is, "an individual who is receiving tax-free payments under a structured settlement and proposes to transfer payment rights under the structured settlement." *Id.* § 141.002(9).

- A "transferee" is "a party acquiring or proposing to acquire structured settlement payment rights through a transfer." *Id.* § 141.002(21). The trial court's order identifies LumpSum as the transferee.

- "Assignee" is not a defined term under the Act, so we will afford the word its ordinary meaning unless "a different, more limited, or precise definition is apparent from the term's use in the context of the statute." *See Sw. Royalties, Inc. v. Hegar*, No. 14-0743, 2016 WL 3382151, at *4 (Tex. June 17, 2016) (quoting *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013) (per curiam)). An "assignee" is commonly understood to mean "a person to whom a right or liability is legally transferred" or "a person appointed to act for another." *See* NEW OXFORD AMERICAN DICTIONARY 97 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010). Under Texas common law, an assignee "stands in the shoes of his assignor." *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 604 (Tex. App.— Houston [14th Dist.] 2015, pet. denied) (quoting *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010)). Because "assignee" or "assignees" is used in the Act only in phrases such as "transferee or assignee" and "transferees or assignees,"[4] we understand the word to refer to a person who receives an assignment from a transferee.

Thus, if we replaced each role referred to in section 141.005(4) with the name of the person or entity playing that role in the proposed transfer, then section

---

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 141.005(4), 141.007(d).

12

141.005(4) would read as follows: "Following a transfer of structured settlement payment rights under this chapter, neither Met Tower nor MetLife may be required to divide any periodic payment between Turpin and LumpSum or Andrew Jonathan."

Metropolitan contends that the trial court is not permitted "to force [Metropolitan] to do indirectly what it could not force [Metropolitan] to do directly." For several reasons, we do not find this argument persuasive.

First, and as we have just seen, the legislature drew distinctions in the Act among structured settlement obligors, annuity issuers, payees, transferees, and assignees. The legislature specified that annuity issuers and structured settlement obligors cannot be required to make divided payments, but it did not extend the same prohibition to transferees or assignees. We presume that in identifying the entities that cannot be compelled to divide a periodic payment, the legislature deliberately omitted transferees and assignees from the list. *See Lippincott*, 462 S.W.3d at 509 ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))).

Second, when the legislature intended an "indirect" transaction or payment to fall within the scope of one of the Act's provisions, it expressly said so. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004 ("No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee . . . unless the transfer has been approved in advance in a final court order . . ."). We presume that the legislature intentionally omitted any reference in section 141.005 to "indirect" division of periodic payments because the legislature did not intend to prohibit them. *See Phila. Indem. Ins. Co. v. White*,

13

490 S.W.3d 468, 489 (Tex. 2016) (explaining that because the legislature included fault-based language in some provisions and omitted it from other provisions of the same chapter of the Property Code, the court must presume the omission was deliberate); *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 406 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (explaining that a comparison of a statute's provision including a particular limitation with a provision omitting the limitation demonstrates that if the legislature intended to include the limitation in both provisions, "it knew how to say so").

Third, the other Texas appellate court to address the issue has recognized that the Act permits a transferee (or its assignee) to divide payments between itself and the payee, or between itself and another transferee. *See, e.g.*, *J.G. Wentworth Originations, LLC v. Freelon*, 446 S.W.3d 426, 432–33 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *J.G. Wentworth Originations, LLC v. Perez*, No. 01-13-00264-CV, 2014 WL 3928590, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 12, 2014, no pet.) (mem. op.).  Indeed, MetLife recently presented the same argument verbatim to the First Court of Appeals, and we agree with that court's reasoning:

> Citing *Fox v. Robison*, 111 Tex. 73, 229 S.W. 456, 458 (1921), MetLife asserts, "[T]he Texas Supreme Court specifically prohibited a party from circumventing a statute's provisions in order to achieve indirectly what the party could not achieve directly under the statute." Thus, we ask what could [the transferee] not achieve, either directly or indirectly, under Section 141.005(4)?  The answer is that [the transferee] could not obtain an order requiring MetLife to split the periodic monthly payments between [the transferee] and [the payee]. . . .
>
> As we noted in *RSL–3B–IL, Ltd.*, the [Act] implicitly recognizes that requiring an annuity issuer to divide payments between the payee and transferee or two or more transferees or assignees would result in an unforeseen increase in transaction costs and responsibilities.  *RSL–3B–IL, Ltd.*, 470 S.W.3d at 136.  We indicated that Section 141.005(4) protects obligors and annuity issuers, such as MetLife, from incurring

14

unforeseen transaction costs and responsibilities because they cannot be required to divide payments. *See id.* In other words, Section 141.005(4) serves the purpose of preventing obligors and annuity issuers from bearing increased transaction costs and responsibilities. *See id. . . .* We hold that the order did not circumvent Section 141.005(4) as MetLife claims.

*Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC*, No. 01-15-00147-CV, 2016 WL 3162770, at \*8 (Tex. App.—Houston [1st Dist.] June 2, 2016, no pet.) (citing *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)).

We overrule this issue.

**D.    The trial court did not improperly compel Metropolitan to have a business, contractual, or agency relationship with Andrew Jonathan.**

In its next issue, Metropolitan argues that the trial court reversibly erred by forcing Metropolitan into a non-consensual relationship with Andrew Jonathan. Metropolitan characterizes the relationship variously as a business relationship, a contractual relationship, or an agency relationship.

Metropolitan first contends that the trial court's order improperly created an uncertain long-term business relationship between two prior strangers, and that "[a]s a court-imposed relationship, . . . when problems arise the parties will not be able to rely on a negotiated written agreement to sort things out." Metropolitan fails to cite any authority in support of its position that such a court-imposed relationship is legally impermissible.

As for the nonconsensual nature of the relationship between Metropolitan and Andrew Jonathan, Metropolitan's consent is unnecessary. In stating the requirements for a trial court to approve a transfer of structured settlement payment rights, the legislature neither conditioned such approval on the agreement of the

15

structured settlement obligor and annuity issuer nor authorized them to veto the proposed transfer.

Finally, the parties do not need to refer to a "negotiated written agreement" between Metropolitan and Andrew Jonathan "to sort things out" if problems should arise over the course of their relationship. Their relationship already is governed by "the terms of the structured settlement," which expressly includes the trial court's order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.002(17). If complying with the court order should subject to Metropolitan to liabilities, costs, or attorney's fees, then Metropolitan has a statutory cause of action against the transferee to recover them. *See id.* § 141.005(2).

Metropolitan similarly argues that the trial court violated its liberty to enter into, or to refuse to enter into, a contractual or agency relationship with Andrew Jonathan. The trial court, however, created neither a contractual nor an agency relationship between Metropolitan and Andrew Jonathan. Their relationship instead is governed by the trial court's order as authorized by the Act. Under the terms of that order, Andrew Jonathan is Turpin's agent, not Metropolitan's agent.

Metropolitan additionally complains that it will have no remedy if Andrew Jonathan fails to pay Turpin, but should that occur, then it would be Turpin who is be harmed, not Metropolitan. By statute, Metropolitan cannot be held liable to Turpin for those payments. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(1) (after a transfer, "the structured settlement obligor and the annuity issuer shall, as to all parties except the transferee, be discharged and released from any and all liability for the transferred payments). To that end, the trial court included the following language in the final order:

> IT IS FURTHER ORDERED that [MetLife] and [Met Tower] shall absolutely, irrevocably, and forever discharge and satisfy their legal

16

and contractual obligation to make the Term Payments (including the Turpin Assigned Payments and the Remaining Turpin Monthly Payments) by paying and remitting said Term Payments to Andrew Jonathan, pursuant to this court order and the Servicing Arrangement and by doing so, [MetLife] and [Met Tower] are forever released from, and shall have not have, any current or future liability or obligation to Mr. Turpin for the Term Payments.

Under this same heading, Metropolitan argues at length that servicing arrangements increase its burdens and risks. Under the Act, however, it is the payee's best interest we consider, not the best interests of the structured settlement obligor or the annuity issuer. Moreover, the Act prohibits a trial court from compelling Metropolitan to divide payments, but nothing prohibits Metropolitan from voluntarily splitting payments; thus, if Metropolitan believed that a servicing arrangement would increase its burdens and risks, then it could have avoided those increases by agreeing to divide the payments itself. Indeed, it has done so in the past: this is the third court-approved transfer of Turpin's periodic payments from the Metropolitan annuity, and in both of the earlier transfers, Metropolitan agreed that it would divide the payments between Turpin and the transferee.

We overrule this issue.

**E.    The trial court granted relief that was permitted under the Act, requested by LumpSum, and supported by the record.**

According to Metropolitan, the trial court reversibly erred in imposing the serving arrangement because no such relief is available under the Act, and even if it were available, LumpSum neither requested nor proved its entitlement to such relief. We address each of these points in turn.

*1.    A transfer may include a servicing arrangement.*

Metropolitan contends that the Act does not give transferees the standing or authority to seek any relief other than "approval of a transfer." Metropolitan

17

assumes that a servicing arrangement cannot be part of a transfer, but the Act permits a trial court to approve a transfer not only to a transferee, but also to the transferee's assignee. *See id.* § 141.005(4). Here, the trial court's order transferred Turpin's right to receive periodic payments to LumpSum, and LumpSum assigned the right to Andrew Jonathan as permitted by the Act. The trial court's final order therefore refers to the "transfer of the Turpin Assigned Payments by Mr. Turpin to [LumpSum] and, ultimately, to Andrew Jonathan, as reflected in the Transfer Agreement and described in the Application."

Metropolitan also asserts that the Act does not "contemplate an order relating to <u>untransferred</u> payment rights." Stated in the terms used by the trial court, Metropolitan contends that even if the trial court could transfer the right to receive the "Turpin Assigned Payments" of $1,850 per month to Andrew Jonathan as LumpSum's assignee, the Act did not contemplate the transfer of the right to receive the "Remaining Turpin Monthly Payments." Again, we disagree. Nothing in the Act prohibits a servicing arrangement. Moreover, section 141.005(5) provides, "*Following a transfer* of structured settlement payment rights under this chapter . . . any *further transfer* of structured settlement payment rights by the payee may be made only after compliance with all of the requirements of this chapter." *Id.* § 141.005(5) (emphasis added). A successive transfer—such as would occur if Turpin were to transfer the right to the payments he is now receiving from Andrew Jonathan—would be a "further transfer" that is "following a transfer."

In a related vein, Metropolitan asserts that the Act allows Turpin to sell the rights to the entirety of any number of monthly payments, but it does not allow Turpin to sell the right to a portion of a monthly payment. We find no support for this contention in the Act. As defined by the legislature, "'[p]eriodic payments'

18

includes both recurring payments and scheduled future lump-sum payments." *Id.* § 141.002(10). Because "periodic payments" include *all* payments, and the legislature addressed multiple transfers by a single payee, the legislature must have intended to permit transfers of less than all of the future periodic payments. The legislature imposed no limits on how a transfer of the right to a portion of the future periodic payments must be carved out; thus, the Act permits a payee who chooses to sell only a portion of his periodic payments to sell all of some monthly (or lump-sum) payments, or some of all monthly (or lump-sum) payments, or any combination of these.

### 2. *LumpSum requested and pleaded facts showing entitlement to such relief.*

LumpSum stated in its application to the trial court that Turpin agreed in the transfer agreement "to assign and transfer the Assigned Payments to Transferee [LumpSum] and/or its successors and assigns." LumpSum also attached the transfer agreement to the application and incorporated it by reference. Paragraph 8.11 of the transfer agreement provides that LumpSum may assign its rights and interests in the transfer agreement, "the other Transaction Documents, the Annuity, the Settlement Documents, and/or the Periodic Payments," and upon such assignment,

> the transferor shall look solely to such assignee for any payment (e.g., the Transfer Price, the servicing of non-Transferred Payments) and any other performance hereunder or thereunder. . . . If Purchaser does make an assignment as contemplated hereby, any such reference in this Agreement and its related documents shall mean Purchaser's assignee."

In its response and objection to the Application, Metropolitan raised the issue of a servicing arrangement. LumpSum responded by filing a brief in support of its application, and addressed Metropolitan's objection in the brief.

Finally, the request for the proposed servicing arrangement was tried without objection. *See Roark v. Stallworth Oil & Gas, Inc*., 813 S.W.2d 492, 495 (Tex. 1991) ("The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal."). Counsel for both sides discussed it in their opening statements, and both of the witnesses at the hearing testified about it without objection. Turpin stated that he received payments on the Prudential annuity through a servicing arrangement and had experienced no problems with it. He testified that he understood the servicing arrangement that LumpSum proposed, and he asked the trial court to approve it. LumpSum's general counsel also testified on the subject, and explained how the servicing arrangement would work in this case. Thus, the pleadings and the parties' conduct at the hearing placed the matter of the servicing arrangement before the trial court.

Under the same heading, Metropolitan argues that it was not sued for injunctive relief, and that, in any event, LumpSum did not show itself entitled to injunctive relief. Our answer to that argument is the same as our answer to LumpSum's arguments that assume that this was an action to enforce or construe a contract: this is a special statutory proceeding under the Act, and it is the Act's requirements that apply, not those concerning a different kind of action.

We overrule this issue.

**F.      The trial court did not abuse its discretion in finding the transfer to be in Turpin's best interest.**

As we have observed before, "the Act's purpose is to protect those who have entered into structured settlements of their personal-injury claims from transferring their rights to future periodic payments for a lump-sum payment that is inadequate." *Wash. Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 769

20

(Tex. App.—Houston [14th Dist.] 2013, pet. denied). Stated more pointedly, the Act exists "to protect unwary tort claimants from potential abuse in their transactions with factoring companies." *Transamerica Occidental Life Ins. Co. v. Rapid Settlements, Ltd.*, 284 S.W.3d 385, 391 (Tex. App.—Houston [1st Dist.] 2008, no pet.). For that reason, the Act requires that a trial court approving a transfer must expressly find that "the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004. We review the trial court's best-interest finding for abuse of discretion. *See Peachtree Settlement Funding, LLC*, 2016 WL 3162770, at *12.

"Best interest" is not defined in the Act, and Metropolitan urges us to follow the Seventh Court of Appeals' best-interest analysis as set forth in *In re Rains*. The *Rains* court looked at eight factors in determining "the best interest of the payee," and an additional ten factors "to shield against possible exploitation and abuse" by the transferee. *See In re Rains*, 473 S.W.3d at 464.[5]

---

[5] Together, the eighteen factors that the *Rains* court included in its best-interest analysis are as follows:

1. the financial resources and income available to the payee and the payee's dependents from sources other than the structured settlement payments;

2. the extent or amount of the payee's debt and expenses; the debt and expenses of the payee's family; and the ability to pay those debts and expenses;

3. the real and personal assets available to the payee and the payee's family;

4. the future yet reasonably foreseeable liabilities of the payee and the payee's family;

5. the future yet reasonably foreseeable domestic, economic, physical, medical, and educational needs of the payee and the payee's dependents;

6. the payee's current need for and intended use of the lump sum to be received;

7. the number and ages of the dependents maintained by the payee;

8. the percentage of payments being assigned;

9. the payee's age, education, and acumen;

21

Because these factors take the court's analysis well beyond the scope of the inquiry authorized by the Act, we again decline to follow *Rains*. We instead hold that "best interest" is to be determined by general reasonableness and consistency with the Act's purpose, which is to protect the payee from a factoring company's overreaching by requiring the factoring company to make certain disclosures and by requiring a trial court to find that the transfer is in the payee's best interests, "taking into account the welfare and support of the payee's dependents." If the exchange is reasonable and the payee is left with sufficient resources to provide for the welfare and support of himself and his dependents, then the trial court's best-interest analysis need go no further.

The evidence in this case surpasses that standard. Turpin testified that he is a 49-year-old former police officer and is married to a teacher. The Turpins have a 21-year-old daughter who is starting college, and they have 9-year-old twins. They also have $118,000 in debt, and Turpin wants to use the payment he would receive from LumpSum to pay off that debt, leaving some to apply to his daughter's college tuition and some in reserve. In addition to Turpin's wife's unspecified

---

10. the payee's business or financial acumen;

11. the payee's ability to secure independent and informative financial advice;

12. the payee's attempt to secure independent and informative financial advice if the payee otherwise lacked financial acumen;

13. the value being received in exchange for the value being relinquished by the payee;

14. the payee's effort, if any, to maximize the return;

15. the payee's search for and communication with other factoring companies;

16. the presence of other factoring companies or entities willing to strike a bargain and the value they would give in exchange for the value received;

17. the financial alternatives available to the payee, if any; and

18. the financial capability of the factoring company to perform, depending upon the manner in which the assignment is structured.

*See In re Rains*, 473 S.W.3d at 464.

salary, the Turpin's household income includes $1,800 per month from Turpin's medical pension and a small amount from a Prudential annuity. From Metropolitan, even after the transfer, Turpin would continue to receive $5,400 per month, which will increase to $6,457 per month in May 2028 and to $10,807 per month in October 2029. From 2019 to and including 2039, Turpin also will receive five lump-sum payments from Metropolitan totaling $900,000. Thus, Turpin will continue to have a yearly income of at least $86,400, not including his wife's income, the Prudential annuity, the lump-sum payments, and the increases in the Metropolitan monthly annuity payments.

LumpSum agreed to buy 174 monthly payments of $1,850, having a present value of $279,350.01 and a future value of $321,900. LumpSum originally offered $175,000, but the trial court appointed independent financial consultant Pat Robertson to determine if better offers were available. Correspondence in the record indicates that J.G. Wentworth offered $198,000 for the same stream of payments, and an unidentified company offered $192,000. LumpSum then raised its offer to $190,000 (a nominal discount rate of 7.833% and an effective rate of 8.121%). Turpin wrote to the court that he preferred to accept LumpSum's offer because they previously had worked together and he trusted the company. He also wanted to avoid the delay from litigating another transfer.

On this record, the trial court reasonably could conclude that LumpSum was not exploiting Turpin and that after the transfer Turpin would have sufficient resources to provide for the welfare and support of himself and his dependents. We therefore conclude that the trial court did not abuse its discretion in finding that the transfer was in Turpin's best interest, and we overrule this issue.

**G.    The trial court erred in taxing costs against Metropolitan.**

In its final issue, Metropolitan argues that the trial court erred in taxing costs against it. We agree. Under section 141.007(f) of the Act, "fulfillment of the conditions in Section 141.004 are solely the responsibility of the transferee in any transfer of structured settlement payment rights." Section 141.004 provides that "[n]o direct or indirect transfer of structured settlement payment rights shall be effective . . . unless the transfer has been approved in advance in a final court order based on express findings by the court . . . ." Fulfilling the requirement to obtain a court order approving the transfer ceases to be "solely the responsibility of the transferee" when the trial court shifts the financial responsibility for the court costs to the structured settlement obligor and the annuity issuer.

We therefore sustain this issue and modify the judgment to tax costs against transferee LumpSum. As modified, we affirm the trial court's judgment.[6]

## IV. CONCLUSION

We hold that the Texas Structured Settlement Protection Act authorizes a trial court to approve a transfer that includes a servicing arrangement, and that approval of such a transfer was properly placed before the trial court both by the pleadings and by the conduct of the transferee and the interested parties at the hearing.

We further conclude that the trial court did not abuse its discretion in finding that the transfer of $1,850 out of each of 174 monthly payments in exchange for

---

[6] In a post-submission memorandum of authorities, Metropolitan refers us to the Fourth Court of Appeals' recent opinion in *In re Hughes*, No. 04-15-00482-CV, 2016 WL 4208116 (Tex. App.—San Antonio Aug. 10, 2016, no pet. h.), stating, "The *Hughes* opinion held that the structured settlement transfer was in violation of the anti-assignment language in the settlement documents, which is the exact same issue raised in [this] case." That issue is not before the court. To quote from Metropolitan's reply brief, "[Metropolitan] did not raise the issue of assignability in its Opening Brief and it is, therefore, beyond the scope of this appeal."

$190,000 was in Turpin's best interest. Finally, we hold that under section 141.007(f) of the Act, payment of court costs is solely the responsibility of the transferee, and thus, the trial court erred in shifting that responsibility to the structured settlement obligor and the annuity issuer. We therefore modify the judgment to tax costs against LumpSum as the transferee, and as modified, we affirm the trial court's order.


/s/    Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Jamison.